## UNITED STATES v. WHITED & WHELESS, LIMITED, ET AL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 204. Submitted March 19, 1918.—Decided April 15, 1918.

The provision in the Act of March 3, 1891, § 8, 26 Stat. 1099, that "suits by the United States to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents," was designed for the security of patent titles and does not apply to an action at law to recover the value of patented land as damages for deceit practiced by the defendant in procuring the patent.

A statute of limitations should be strictly construed in favor of the Government.

Where there are two remedies for the protection of the same right, one may be barred and the other not.

The provision in the Act of March 2, 1896, limiting the Government's money recovery to the minimum government price (see 29 Stat. 42, § 2), when patents have been "erroneously issued under a railroad or wagon road grant" and the lands have been sold to *bona fide* purchasers, does not apply to a case in which the Government seeks money damages because of deceit practiced in procuring a patent under the Homestead Law.

232 Fed. Rep. 139, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful* for the United States:

In the absence of limitation the Government may sue either to annul the patent or to recover the value of the land. The authority of the Attorney General to make this election of remedies results from his general authority to sue in behalf of the United States upon all just grounds that are available to private individuals. *United States v. San Jacinto Tin Co.*, 125 U. S. 273, 279.

A demonstration of the availability of both these remedies to the Government is found in the fact that where one of them can not be enforced without injury to third parties resort may be had to the. other—that is, where the land has passed to an innocent purchaser its value may still be recovered. *Southern Pacific Co.* v. *United States,* 200 U. S. 341, 352. To the same effect are *Cooper* v.. *United States,* 220 Fed. Rep. 867, 870; *United States* v. *Koleno,* 226 Fed. Rep. 180, 182; *United States* v. *Frick,* 244 Fed. Rep. 574, 580; *Bistline* v. *United States,* 229 Fed. Rep. 546, 548. The doctrine of these cases is that the right of the Government to sue for the value of the land embraced in a fraudulent patent is not dependent upon but exists independently of the right to sue for annulment of the patent.

The right to recover the value of the land is not affected by the limitation act. There is nothing in the language to indicate an intention to do more than to bar the right to recover the land. To extend it by ordinary implication beyond its plain import would be to disregard the settled rule that the United States "are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound." *United States* v. *Nashville &c. Ry.* Co., 118 U. S. 120, 125; *United States* v. *Insley,* 130 U. S. 263, 265–266; *United States* v. *American Bell Telephone Co.,* 159 U. S. 548, 554. Examples of restrictive interpretation of this statute are not lacking. *Northern Pacific Ry. Co.* v. *United States,* 227 U. S. 355, 367; *La Roque* v. *United States,* 239 U. S. 62, 68; *Louisiana* v. *Garfield,* 211 U. S. 70, 77.

The situation which called for this statute discloses its singleness of purpose. The Act of March 3, 1887, 24 Stat. 556, for the adjustment of land grants, resulted in a large number of suits to cancel patents which had been erroneously issued. This produced a general feeling of

uncertainty respecting the stability of titles to public lands and tended to cast discredit on all public land patents. It was to settle such titles and restore the public faith in patents of the United States that the limitation clause was inserted in the Act of 1891. See House Report 253, 54th Cong., 1st sess. The language of the act is well adapted to accomplish that result, and that result can be fully accomplished without in any manner affecting the right to sue for the value of land procured by fraud.

By appropriate language to meet a different situation Congress might have barred both classes of suits; and this it has done in a specific instance with respect to certain lieu land patents. Act of March 2, 1896, 29 Stat. 42. This is an indication of the understanding of Congress that in order to bar the right to recover the value of land procured by fraud or mistake it is not enough to bar the right to recover the land.

In the confirmation by limitation act of fraudulent patents for the single purpose of settling land titles there is nothing inconsistent with the recognition of continued right to redress on account of the fraud.

A private owner who has been defrauded of his property may, within the limitation period, elect to confirm the transaction and recover the value. He does the same thing in effect when he delays action beyond the time limited by law for recovery of the property, if at that time his right to recover the value be not also barred. In that event, though the title be confirmed, the value may still be recovered. *Lamb* v. *Clark*, 5 Pick. 193, 198; *Kirkman* v. *Philips' Heirs*, 7 Heisk. 222, 224; *Ivey's Admr.* v. *Owens*, 28 Alabama, 641, 649; *Ganley* v. *Troy City National Bank*, 98 N. Y. 487, 494; *Robertson* v. *Dunn*, 87 N. Car. 191, 194; *Campbell* v. *Holt*, 115 U. S. 620, 625; *Hardin* v. *Boyd*, 113 U. S. 756, 765.

The right of the Government to relief against fraud by every appropriate remedy is not less than that of the

individual. *United States* v. *San Jacinto Tin Co.*, 125
U. S. 273, 279. In a case of fraud, it is entitled to "all
the remedy which the courts can give"; *United States* v.
*Minor*, 114 U. S. 233, 241; including election between
different remedies; *Fenemore* v. *United States*, 3 Dall.
357, 363; and the pursuit of one after another is no longer
available. *Southern Pacific Co.* v. *United States*, 200 U. S.
341, 352.

All of the lower federal courts which have had to con-
sider this question, except in the present case, have sus-
tained the right of the Government to sue for the value
of land obtained by fraud, after the land itself has been
put beyond recovery by the limitation statute. *United
States* v. *Jones*, 218 Fed. Rep. 973–975; *s. c.*, 242 Fed.
Rep. 609, 616; *United States* v. *Pitan*, 224 Fed. Rep. 604,
609, 610; *s. c.*, 241 Fed. Rep. 364, 366; *United States* v.
*Koleno*, 226 Fed. Rep. 180, 182–183; *Bistline* v. *United
States*, 229 Fed. Rep. 546, 548; *Union Coal & Coke Co.* v.
*United States*, 247 Fed. Rep. 106. It is evident that the
decision of the Court of Appeals in this case was founded
entirely upon an expression of this court in the case of
*United States* v. *Chandler-Dunbar Co.*, 209 U. S. 447, 450,—
a case readily distinguishable.

The measure of value is not the minimum government
price. The offer of the Government to accept $1.25
per acre under the conditions specified in the Homestead
Act has no reference to actual value. The conditions
themselves imply that the land is much more valuable
than the price so fixed. *Pitan* v. *United States*, 241 Fed.
Rep. 364, 366; *United States* v. *Trinidad Coal Co.*, 137
U. S. 160, 170. The Act of March 2, 1896, § 2, relates
only to cases where patents were "erroneously issued
under a railroad or wagon road grant." *Pitan Case, supra;
United States* v. *Frick*, 244 Fed. Rep. 574, 580. To the
same effect are *Cooper* v. *United States*, 220 Fed. Rep. 867,
869; and *Union Coal & Coke Co.* v. *United States, supra.*

*Mr. T. Alexander, Mr. A. L. Alexander* and *Mr. J. D. Wilkinson* for defendants in error:

In an action by the United States to recover the value of land, which it alleges was fraudulently procured under a patent at the price of $1.25 per acre, no cause of action or right to recover is disclosed, for the reason that the price received was the price at which it was willing to sell the land and, therefore, it suffered no injury, even conceding the fraud or misrepresentation as alleged to be true. Act of March 2, 1896, §§ 2, 3, 29 Stat. 42; *United States* v. *Norris*, 222 Fed. Rep. 14; *United States* v. *Pitan*, 224 Fed. Rep. 604; *United States* v. *Oregon & C. R. Co.*, 122 Fed. Rep. 541; *Southern Pacific R. R. Co.* v. *United States*, 133 Fed. Rep. 662; *s. c.*, 200 U. S. 354; *Same* v. *Same*, 186 Fed. Rep. 737; Rev. Stats., § 2357.

Injury or damage to plaintiff as a result of fraudulent representation is a necessary prerequisite of recovery in an action for deceit. *Stratton's Independence* v. *Dines*, 135 Fed. Rep. 449; *Srader* v. *Srader*, 151 Indiana, 339; *Emerson* v. *Brigham*, 10 Massachusetts, 199; *Freeman* v. *Venner*, 120 Massachusetts, 424; *Thompson* v. *Newell*, 118 Mo. App. 405.

Suits by the United States to vacate and annul any patent hereafter issued shall only be brought within six years after the date of such patent. Act of March 3, 1891, 26 Stat. 1095.

Statutes of limitation are founded upon the general experience of mankind that claims which are valid are not usually allowed to remain neglected. These statutes by the lapse of time become laws of repose protecting parties from prosecution of stale claims, when by the loss of evidence from death of some witnesses and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth. *Riddlesbarker* v. *Insurance Co.*, 7 Wall. 386; *Campbell* v. *Haverhill*, 155 U. S. 610.

Statutes of limitation, with regard to land at least, are generally held to affect the right, even if in terms only directed against the remedy. *United States* v. *Chandler-Dunbar Co.*, 152 Fed. Rep. 25; *Sharon* v. *Tucker*, 144 U. S. 533; *Davis* v. *Mills*, 194 U. S. 451.

The Act of 1891, as construed by most of the inferior federal courts, bars a recovery of the price of land after the lapse of six years, where the patent was obtained by fraud. *Kansas City Lumber Co.* v. *Moores*, 212 Fed. Rep. 153; *United States* v. *Exploration Co.*, 190 Fed. Rep. 405; *United States* v. *Chandler-Dunbar Co.*, 152 Fed. Rep. 25; *United States* v. *Smith*, 181 Fed. Rep. 545; *United States* v. *Norris*, 222 Fed. Rep. 14; *United States* v. *Whited & Wheless*, 232 Fed. Rep. 139.

This court has in effect held that this statute is a complete bar to any suit of any nature prosecuted after the lapse of such time, for the value of the land or cancellation of the patent. *United States* v. *Winona R. R. Co.*, 165 U. S. 463; *United States* v. *Chandler-Dunbar Co.*, 209 U. S. 447.

Where a patent is obtained by fraud, the United States has one cause of action with two remedies to enforce it. When its cause of action is barred by the statute of limitation of 1891, both of its remedies are barred and it cannot resort to either. *Brasie* v. *Minneapolis Brewing Co.*, 87 Minnesota, 456; *People* v. *Michigan Central Ry. Co.*, 145 Michigan, 140; *Auditor* v. *Halbert*, 78 Kentucky, 577; *Jex* v. *City of New York*, 13 N. Y. St. Rep. 545; *Bayles* v. *Crossman*, 5 Ohio Dec. 354; *Wickersham* v. *Lee*, 83 Pa. St. 422.

*Mr. Henry McAllister, Jr.*, by leave of court, filed a brief as *amicus curiæ*, on behalf of the Exploration Company, Ltd.:

While a patent may be directly annulled in a suit brought within six years from its date, nevertheless so

long as it remains uncanceled there is a conclusive presumption that the laws under which it was issued were complied with and that the patentee was lawfully entitled thereto. It cannot be collaterally attacked. *Johnson* v. *Towsley,* 13 Wall. 72, 83; *Steel* v. *Smelting Co.,* 106 U. S. 447, 450; *Noble* v. *Union River Logging Co.,* 147 U. S. 165, 175; *El Paso Brick Co.* v. *McKnight,* 233 U. S. 250, 257; *Wright-Blodgett Co.* v. *United States,* 236 U. S. 397, 403; *Burke* v. *Southern Pacific R. R. Co.,* 234 U. S. 669, 691.

In the light of the principles established by these cases and many others which could be cited, there is but one relief open to the United States with respect to patents issued unlawfully and through fraud, namely, a direct suit in equity to vacate the same. So long as the patent stands it is not merely an instrument of conveyance but there inheres in it an irrefutable presumption that the patentee was qualified, that he acted lawfully in making his entry, and that the Land Department proceeded according to law. This being true, how is it possible for the Government to secure relief by way of damages in the face of a conclusive adjudication of regularity of which the outstanding patent is the final evidence? The case is not analogous to an action for deceit by an ordinary vendor of land against the purchaser. His deed has no effect except to convey title. It does not negative the existence of fraud in its procurement and the vendor may allow the conveyance to stand and sue for damages.

The federal courts which have recently sustained such actions at law by the United States have completely overlooked this vital distinction. *United States* v. *Koleno,* 226 Fed. Rep. 180, 182; *Pitan* v. *United States,* 241 Fed. Rep. 364, 366; *United States* v. *Jones,* 242 Fed. Rep. 609, 615.

The decisions of this court in *United States* v. *Minor,* 114 U. S. 233, and *Southern Pacific R. R. Co.* v. *United States,* 200 U. S. 341, do not conflict with the above views.

In any event after the lapse of six years from the date of the patent no relief can be secured by the Government in any form of action founded on fraud or illegality attending its issue.    The statute, as construed by this court, has the effect of barring any proceeding founded upon fraud or illegality in procuring the patent.    *United States* v. *Chandler-Dunbar Co.,* 152 Fed. Rep. 25; s. c., 209 U. S. 447, 450; *Louisiana* v. *Garfield,* 211 U. S. 70, 77.

The attitude of the Government in the present case is, in effect, that the Act of 1891 only affects *a remedy,* namely, a suit to annul a patent.    If a void or voidable patent is, after the lapse of the prescribed time, "to have the same effect against the United States that it would have had if it had been valid in the first place," *Chandler-Dunbar Case, supra,* and if the statute affects the right as well as the remedy, then it indubitably follows that as to any remedy the Government may seek, whether by way of proceedings to cancel or an action for damages, the patent must be treated as though valid in the first instance.    Any other construction would permit a collateral attack where a direct attack was prohibited—a practice always frowned upon by courts of equity and of law; it would limit the scope of the statute to the *remedy*—which this court has said may not be done.

It was the intention of Congress that this statute should apply to all forms of action affecting the substance given by the patent.    It can make little difference to a patentee, or his grantee (unless the latter is still able to prove innocent purchase notwithstanding lapse of time), whether the Government shall be allowed to take away his *land* or the *value* of his land.    For all practical purposes the two are the same.    It has been the practice of the Government to treat the title and its value as the same.    Act of March 3, 1887, 24 Stat. 556; *United States* v. *Southern Pacific R. R. Co.,* 200 U. S. 341.

This conclusion is alone in accord with the history of

the Act of 1891, and with its practical application and
interpretation by the legislative and executive depart-
ments of the Government.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is a suit to recover from the liquidating com-
missioners and the former president of a dissolved cor-
poration the value of public lands described in a patent
which it is alleged was procured from the Government by
the fraudulent conduct of the company and of its president.

A demurrer to the petition was sustained by the Dis-
trict Court, and this judgment was affirmed by the Cir-
cuit Court of Appeals on the ground that the cause of ac-
tion stated was barred by the statute of limitations, which
reads as follows:

"That suits by the United States to vacate and an-
nul any patent heretofore issued shall only be brought
within five years from the passage of this act, and suits to
vacate and annul patents hereafter issued shall only be
brought within six years after the date of the issuance of
such patents." Act of March 3, 1891, § 8, 26 Stat. 1099.

The patent involved was issued on December 12, 1898,
and if this case, commenced on December 29, 1914, were
one "to vacate and annul" the patent, plainly it would
be barred. But this being a suit to recover damages
from the fraudulent procurers of the patent, the question
presented for decision is, "Does the statutory bar to a
suit to annul the patent also bar a suit for the value of the
land fraudulently procured to be patented?"

The chief argument in support of the judgment of the
lower court is that while the Government before the
period of the statute had expired had two remedies, one
to annul the patent and one, affirming the patent, to re-
cover the value of the land, yet they were both based on
one right, and that when the statute barred the suit to
annul, thereby the patent became as valid for the future

as if it had been properly issued and that this cuts off the right, and leaves the Government without further remedy.

This is begging the question. The statute of limitations did not create the right of action in the Government or either of the remedies for enforcing that right. It relates to the remedy, and in terms applies only to one remedy, that for annulling the patent. The right of the Government, asserted in this case, really springs from the fraudulent obtaining of the patent, not from the patent itself, and this right continues until it is satisfied or cut off by statute, and therefore, to say that the barring of one remedy smothers the right to pursue the other, is mere assertion, and does not advance us toward a conclusion as to the effect, if any, which such bar may have upon the other remedy, and the question we are considering remains unanswered, but becomes, What was the intention of Congress, confessedly not clearly expressed, with respect to this issue, when it enacted this limitation statute?

Fundamental to the interpretation of the statute which the answering of this question renders necessary, lies the rule of law settled "as a great principle of public policy" that the "United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound," (*United States* v. *Nashville, Chattanooga & St. Louis Ry. Co.*, 118 U. S. 120, 125) and also the fact that this principle has been accepted by this court as requiring not a liberal, but a restrictive, a strict, construction of such statutes when it has been urged to apply them to bar the rights of the Government. Thus, in *Northern Pacific Ry. Co.* v. *United States*, 227 U. S. 355, 367, the limitation in the Act of March 2, 1896, c. 39, 29 Stat. 42, was held not applicable to a patent erroneously issued for Indian lands under a railroad grant, and in *La Roque* v. *United States*, 239 U. S. 62, 68, the general language of the very act we

are considering was held not applicable to a trust patent for Indian reserved lands.

With this rule of interpretation and of practice under it in mind, let us consider the scope of the limitation provision relied upon, which is found in § 8 of the Act of March 3, 1891, c. 561, 26 Stat. 1099, entitled, "An act to repeal timber-culture laws, and for other purposes."

This act is a very considerable amendment to and revision of laws relating to public lands and, as House Report No. 253, 54th Cong., 1st sess., shows, it grew out of the insecurity and loss of confidence of the public in the integrity and value of patent titles to public lands, which had been occasioned by conflicting claims, chiefly between land grant railroad companies and the Government, which had resulted in many suits being commenced to cancel patents. The statute was passed to promote prompt action for annulling patents where cause therefor was believed to exist and to make titles resting upon patents dependably secure when the period of limitation should expire. As might well be anticipated, therefore, this statute, originating in such conditions, was limited in its terms to suits "to vacate and annul" patents, without any reference being made to suits to recover the value of the land when patents were fraudulently obtained, so that only by extravagant interpretation can its bar be made applicable to such suits,—and such interpretation we have seen is forbidden.

To this we add that when the Congress really intended to bar by limitation statute the right to recover the value of lands, as well as the lands themselves, such intention found clear expression in the Act of March 2, 1896, 29 Stat. 42, which modified, and in a measure is a substitute for, the section we are considering, by declaring: "That no suit shall be brought or maintained, *nor shall recovery be had for lands or the value thereof*, that were certified or patented in lieu of other lands," etc.

And finally, the decisions of this court furnish clear confirmation of the reality and substantial character of the contention of the Government, by holding that when by mistake public officers execute a patent to a railroad company for lands which had afterwards been conveyed to purchasers dealing in good faith, the right of the Government to recover such lands was barred, but nevertheless the right remained to sue for and recover the value of the lands so wrongfully received and conveyed. *Southern Pacific R. R. Co.* v. *United States*, 200 U. S. 341, 353.

Thus the rule and practice for interpreting the act, its language, as well that which is omitted from it as that which is contained in it, and the action of Congress in dealing with a kindred subject-matter, all impel to the conclusion that the omission of language barring the right of the Government to recover the value of lands to which a patent had been fraudulently obtained, was intentional and deliberate, to the end that patent titles might be made secure but that persons who had defrauded the Government should not be protected by the act in the enjoyment of their ill-gotten gains.

The support for the contention of the defendants in error, contrary to this conclusion, which they claim to find in *United States* v. *Chandler-Dunbar Water Power Co.*, 209 U. S. 447, is based upon the statement that by the statute the patent "is to have the same effect against the United States that it would have had if it had been valid in the first place." But that is merely an emphatic way of saying that the title is made good. It does not import that the collateral effects of fraud in obtaining the patent are purged. The element of bad faith or fraud was expressly excluded.

While the Circuit Court of Appeals, as we have stated, rested its decision wholly upon the limitation statute, yet, under warrant of the claim in the demurrer that the petition does not state a cause of action, it is further ar-

gued in this court, that if it be conceded that the right of recovery by the Government is not barred, nevertheless such recovery is limited by § 2 of the Act of March 2, 1896, 29 Stat. 42, to the minimum government price for the land, and since the petition shows that this amount was paid to the Government when the patent was issued, there can be no recovery.

But the Act of 1896 deals only with patents "erroneously issued under a railroad or wagon road grant" and the limited recovery allowed is restricted to cases where it shall appear that such erroneously patented lands have been sold to *bona fide* purchasers. That such a statute can have no application to such a case as we are considering is too obvious for comment.

This doctrine, that where there are two remedies for the protection of a right one may be barred and the other not, is no novelty in the law. So long ago as 5 Pickering, in *Lamb* v. *Clark*, pp. 193, 198, it was tersely stated as then familiar doctrine that "If an injured party has a right to either of two actions, the one he chooses is not barred, because the other, if he had brought it, might have been." And the principle has frequently been recognized by this and other courts. *Lewis* v. *Hawkins*, 23 Wall. 119, 127; *Hardin* v. *Boyd*, 113 U. S. 756, 765; *Kirkman* v. *Philips' Heirs*, 7 Heisk. 222, 224; *Ivey's Administrator* v. *Owens*, 28 Alabama, 641, 649; *Ganley* v. *Troy City National Bank*, 98 N. Y. 487, 494.

The conclusions we are here announcing are in entire accord with well considered opinions by two Circuit Courts of Appeal, those of the Eighth Circuit, in *United States* v. *Koleno*, 226 Fed. Rep. 180, and in *Union Coal & Coke Co.* v. *United States*, 247 Fed. Rep. 106, and that of the Ninth Circuit in *Bistline* v. *United States*, 229 Fed. Rep. 546.

The judgment of the Circuit Court of Appeals is

*Reversed.*