## FRICK v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1919.)

### No. 3206.

1. PUBLIC LANDS ☞120—SUIT TO CANCEL PATENT—FRAUDULENT ENTRY.
　　Evidence *held* to sustain a finding that a patent to public land was obtained by fraud, to which defendant, a subsequent purchaser from the patentee, was a party.

2. PUBLIC LANDS ☞123—PATENTS OBTAINED BY FRAUD—DAMAGES RECOVERABLE.
　　Act March 2, 1896, § 2 (Comp. St. § 4902), limiting recovery from the patentee of land erroneously patented and which has passed to a bona fide purchaser to the minimum government price, does not apply to patents obtained by fraud, and where defendant, who was a party to the fraud, has sold to a bona fide purchaser, the entire amount he received may be recovered.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Suit by the United States against W. P. Frick and another. Decree for the United States, and defendant Frick appeals. Affirmed. For opinion below, see 244 Fed. 574.

Jordan & Brann, of San Francisco, Cal., for appellant.

Annette Abbott Adams, U. S. Atty., and Frank M. Silva, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. The United States brought this suit to cancel a patent for certain land issued in April, 1908, to B. C. Robertson, for forfeiture of certain money paid by Robertson to the United States, and for other proper relief. The land was entered under application by Robertson made in August, 1907, to purchase as timber land, under the act of Congress approved June 3, 1878. The ground of suit is fraud alleged to consist of false representations made by Robertson in the application and affidavit accompanying the same, and by Frick and Robertson in their depositions before the land office in October, 1907, as to the character and condition of the lands.

The particular matters pleaded are: That Frick, who was a witness for Robertson in making final proof, willfully falsely swore that he had personally examined the land, that it was unfit for cultivation and was chiefly valuable for timber, that it was uninhabited and unimproved, that it contained no valuable deposits of mineral, and that there were no mining improvements upon it, whereas, the facts, which were then well known to Frick, were that the lands were more valuable for mineral than for timber; that when Frick bought the land from Robertson there were placer and quartz mining locations made thereon and owned by one Parker, and duly recorded in the office of the county recorder of El Dorado county, Cal., where the lands are situated; that there were veins exposed, and that valuable mining improvements had been made. Frick denied fraud, and pleaded that, since a time prior to the institution of the suit, he had had no interest in the land.

Upon trial it appeared that long before the institution of suit the land had been sold by Frick to the California Door Company, found to be an innocent purchaser for value. The District Court declined to cancel the patent, but rendered judgment against Frick for $6,475.95, or $32.50 per acre, which was the full amount received by Frick for the land when he sold it. Frick appeals.

[1] The principal error assigned is that the evidence was insufficient to sustain the charges of fraud against Frick. Inasmuch as the learned judge of the District Court has carefully and with detailed statement incorporated the most material parts of the evidence in his opinion in the record, there is no necessity for repeating it. The substance of it was that minerals were found upon the land; that there was a cabin upon part of it, and that mining had been done upon portions of the tract for several years; that the country thereabouts was valuable for mineral; that in 1902, and for a number of years thereafter, a Mr. Parker and his wife were living upon the land, and that Parker had built ditches, run a tunnel, and had mined and panned gold; that about 1902 Frick and another person were mining about two miles away from the ground, and that they, Frick and one Mauk, had talked about Parker having purchased the mine, and the price that they had been told Parker paid for the property. There was also evidence tending to show that Frick was familiar with the property; that he had been upon it, and must have known that there was a house upon it when Parker bought the mine. Mrs. Parker testified to the effect that she had lived upon the Parker mine with her husband; that

they owned the mine after 1906, and had made their living from the mine for about eight years; that they had built ditches, employed men, and worked the property, and at one time had taken out over $340 in gold in two days; that they had a well and a garden and a good cabin.

The testimony of the defendant himself was far from satisfactory. He said that he had been upon the property a year or two before he became a witness upon the final proofs made by Robertson; that he had had some experience in mining in that locality, but that it had not been very profitable; that when he was a proof witness, and testified that there were no improvements on the property, he did not know that there was a house upon it, or that there had been a shaft sunk in the ground, or that Mr. Parker was living there. When asked if he and his mining partner had not at one time loaned a pipe and monitor to Parker to work the mine, witness said:

"We evidently did. If we did, I did not know it went on this property. I was not familiar with it at the time. It was quite a distance."

Again, when asked if he and his partner had not discussed the price that Parker paid for the mine, he said:

"We probably did. That has passed out of my recollection. I did not know that it was on this property."

He further testified that Robertson made his final proof about October 28, 1907, and that he paid Robertson "about $5" an acre for the land about nine or ten days thereafter, but that he did not record the deed until September 29, 1909. In explanation of how he became a witness for Robertson, Frick said:

"As I remember the transaction now, Mr. Robertson asked me if I would not be a witness; that he had found some land that was vacant in El Dorado county, when he was up there fishing. He said he had one witness living in that country. He asked me if I couldn't act as a witness for him, and I said certainly I would. I knew the land when he described it to me that time, because I was familiar in that district. I was very happy to act as a witness for him."

He testified that he knew there had been prospecting in that vicinity, and that he had surveyed the property about 1904, when he had found some abandoned cuts thereabouts, but saw no evidence of any improvements, and that, if he had seen the cabin on the ground, he did not know whether he would pay attention to it, as there were many miners' shacks through that country.

The District Court, after considering all these and other facts and circumstances, was fully satisfied that the allegations of fraud were sustained, and, as the evidence well warrants such a conclusion, the case is to be judged by this court as one where the patent was obtained by fraud on the part of Frick. Cooper v. United States, 220 Fed. 867, 136 C. C. A. 497.

[2] It is said that in no event is the United States entitled to a money judgment against Frick except for that portion of the land which was more valuable for mineral than for timber "at the time of the grant," and that there were only about 20 acres shown to have been

of mineral character. To support this contention counsel cite the act of March 2, 1896 (29 Stat. 42, 43, c. 39 [Comp. St. §§ 4901–4903]), to provide for the extension of time within which suits may be brought to vacate and annul land patents, and for other purposes. This act, however, is not applicable to the present case, for it has to do, not with cases of patents issued as a result of fraud, but with those involving rights of purchasers in good faith where patents have been erroneously issued.

In the recent case of United States v. Whited & Wheless, Ltd., et al., 246 U. S. 552, 38 Sup. Ct. 367, 62 L. Ed. 879, the United States brought suit to recover from certain officials of a dissolved corporation the value of certain public lands included in a patent which it was alleged was procured from the United States by the fraudulent conduct of the company and of its president. The Court of Appeals sustained a judgment upon a demurrer to the petition upon the ground that the cause of action stated in the complaint was barred by the statute of limitations under section 8 of an act of Congress of March 3, 1891 (26 Stat. 1099, c. 561 [Comp. St. § 5114]), wherein it was provided that suits of the United States to vacate and annul any patent heretofore issued should only be brought within five years of the passage of the act, and suits to vacate and annul patents thereafter issued should only be brought within six years after the date of the issuance of such patents. After holding that the omission of language barring the right of the government to recover the value of lands to which a patent had been fraudulently obtained was intentional and deliberate, the court considered the argument made by the appellant to the effect that the right of recovery by the government is limited by section 2 of the act of March 2, 1896, supra, to the minimum government price paid for the land. But the court said:

"But the act of 1896 deals only with patents 'erroneously issued under a railroad or wagonroad grant,' and the limited recovery allowed is restricted to cases where it shall appear that such erroneously patented lands have been sold to bona fide purchasers. That such a statute can have no application to such a case as we are considering is too obvious for comment."

Fraud on the part of Frick having been established, the lower court properly held that the United States could sue Frick for the return of the entire value of the land included in the patent obtained through his fraudulent representations. Cooper v. United States, supra; Union Coal & Coke Co. v. United States, 247 Fed. 106, 159 C. C. A. 324.

Affirmed.