**UNITED STATES of America, Plaintiff,**

v.

**CITY OF NEW YORK, a municipal corporation, Tillie Grossman, Sally Grossman, Nathan L. Goldstein and Harry Klein, Defendants.**

United States District Court
S. D. New York.

Sept. 15, 1955.

---

Paul Williams, U. S. Atty., New York City, for plaintiff, Morton S. Robson, Matthew A. Campbell, New York City, of counsel.

Liebowitz, Cobert & Deixel, New York City, for defendants Tillie Grossman and Sally Grossman, Eugene O. Cobert, New

York City, and Sam Panish, Brooklyn, N. Y., of counsel.

WEINFELD, District Judge.

This is an action by the Government brought pursuant to 26 U.S.C. § 3678 and 28 U.S.C. § 1655 to enforce and secure priority of an income tax lien on the proceeds of a condemnation award on real property.

The individual defendants to whom the award is payable as the record owners of the condemned property move for judgment on the pleadings under Rule 12(b) and for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Since the disposition of both branches of the motion centers about the defendants' claim that the action is time barred, they may be considered together.

The essential facts do not appear to be in dispute. Early in 1947 Samuel Grossman voluntarily filed his delinquent income tax returns for the years 1944, 1945 and 1946. The assessment lists covering these taxes were received by the Collector of Internal Revenue prior to June 30, 1947.[1] At that time the taxpayer Samuel Grossman and his wife, Tillie Grossman, as joint tenants, were the owners of real property. In December, 1947 they conveyed their interest to Tillie Grossman and Sally Grossman, the wife and daughter respectively of the taxpayer. It is this property which was later condemned by the City of New York, the proceeds of which are the subject of the present suit. The Government alleges that the conveyance in December, 1947 was without consideration and was made after due demand upon the taxpayer for payment of the delinquent taxes.

There can be no question that upon the facts pleaded a lien arose in favor of the Government against all property of the taxpayer, real and personal.[2] Neither is there any question but that the Government could pursue the encumbered property in the hands of the transferees, who acquired the taxpayer's real property without consideration.[3] What is at issue is whether the Government commenced the action within the statutory time as against the moving defendants, Tillie and Sally Grossman, the initial transferees. The taxpayer is not named as a party defendant.

Absent other factors, suit against the taxpayer to enforce collection of the unpaid taxes would have expired six years after the assessment of the tax[4] sometime in 1953, prior to June 30, 1953, and normally the time to commence suit against his transferees would have expired on the same date.[5] The action was not commenced against the transferees until November 6, 1954. Accordingly they contend that the action must be dismissed because barred by the applicable statute of limitations relating to taxpayer and transferee liability.

1. While the notices and demands are dated May 13, June 20, and June 30, 1947 for the tax years in question, the parties have agreed upon June 30, 1947 as the date of the commencement of the period of limitation on collection.

2. 26 U.S.C. §§ 3670, 3671; Detroit Bank v. United States, 317 U.S. 329, 335, 63 S.Ct. 297, 87 L.Ed. 304; In re Holdsworth, D.C.D.N.J., 113 F.Supp. 878, 879.

3. 26 U.S.C. § 3672; United States v. Scovil, 348 U.S. 218, 221, 75 S.Ct. 244, 247, "A purchaser within the meaning of § 3672 usually means one who acquires title for a valuable consideration in the manner of vendor and vendee." United States v. Kings County Iron Works, Inc., 2 Cir., 1955, 224 F.2d 232.

4. 26 U.S.C. § 276(c).

5. 26 U.S.C. § 311(a); United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984. The defendants in their briefs and affidavits have assumed that an action for collection of taxes or enforcement of lien as against initial transferees "must be commenced within one year after the six year period applicable to the taxpayer or a period of seven years from the time the assessment lists were received", relying upon 26 U.S.C. § 311(b) (1) which refers to assessment rather than collection of taxes. However, the disposition herein makes it unnecessary to consider or act upon the defendants' assumption.

The Government resists this argument on the ground that the period of limitations as against both the taxpayer and the transferees was tolled for a period of 23 months. It appears that on January 28, 1952, the taxpayer made an offer in compromise containing the usual provision agreeing to a suspension of the running of the statutory period of limitations on collection of the liability sought to be compromised during the period the offer would be under consideration and for one year thereafter.[6] The offer of compromise was rejected by the Commissioner on December 30, 1952, and accordingly the Government, on the basis of the suspension period of 23 months, contends that the action was commenced within time—that only five years and six months have elapsed.[7]

The precise point at issue is: whether the action of the taxpayer in waiving the statutory period of limitation, as set forth in his offer in compromise, also tolled the period of limitation as against his initial transferees. I am of the view that it did.

The Internal Revenue Code contains no provision which specifically limits the period for the commencement of suits for the collection of taxes as against the transferees of the taxpayer.[8] To determine the period of limitation §§ 276 and 311, the one relating to tax-payer and the other to transferee liability, must be read together.[9] Section 276(c) provides that suits for collection of taxes must be brought against the taxpayer "(1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period." Section 311 relates to claims against transferees and fiduciaries. Subdivision (a) of § 311, entitled "Method of collection" against such persons, states: "The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, *collected*, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *." (Emphasis supplied.)

The waiver of the limitation period contemplated by subdivision (2) of § 276(c) is intended for the benefit of the taxpayer;[10] and in the event of favorable action upon his compromise offer resulting in a reduction of tax, the benefit thereof also inures to the taxpayer's transferee,—to the extent that the Government's potential claim against the transferee is also reduced. Nothing contained in the statute indicates that Congress intended, where a taxpayer

---

6. Offer in Compromise, Treasury Form 656–C: "In making this offer * * * the proponent * * * expressly waives: * * * 2. The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending * * * and for 1 year thereafter."

7. From June, 1947 (the date when the assessment list was received by the collector) until January, 1952 (when the taxpayer made the offer of compromise) four years and seven months of the statutory period elapsed. From December, 1953 (one year after the offer of compromise had been rejected) until November 10, 1954 (when this action was commenced), eleven months had elapsed.

Thus the total elapsed time when the action was commenced was five years and six months. The same bar date, May, 1955, is reached by adding the suspension period of twenty-three months to the original expiration date.

8. This is not so with respect to assessments. See 26 U.S.C. § 311(b) (1) which contains "provisions of limitation in respect of assessment * * * [but] none in respect of collection." United States v. Updike, 281 U.S. 489, 494, 50 S.Ct. 367, 368, 74 L.Ed. 984.

9. United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; United States v. Markowitz, D.C.N.D.Cal., 34 F.Supp. 827, 830.

10. Cf. Shambaugh v. Scofield, 5 Cir., 132 F.2d 345, 347; United States v. Havner, 8 Cir., 101 F.2d 161, 163.

consented to extend the limitation period in seeking favorable action upon his offer of compromise, that the Government's time to proceed as against the taxpayer's transferee would be running against it while the matter was under consideration; that the six year rather than the extended period controlled.[11] Such an interpretation would lead to unwarranted results. It would mean that in extending a benefit to the taxpayer the public fisc would be at a disadvantage in its efforts to pursue assets in the hands of a transferee. Such an interpretation also would go counter to the settled principle of public policy that "Statutes of limitation barring the collection of taxes must receive a strict construction in favor of the government. Limitation will not be presumed in the absence of clear congressional action."[12]

 The fact that the extension is the result of unilateral action by the taxpayer is of no consequence. Absent congressional enactment the collection of taxes by the Government is subject to no time limit.[13] Congress was not required to fix any period of limitation. In fixing a period of repose and in authorizing its extension upon an agreement by the taxpayer it had the clear right to provide that the extended period shall bind both the taxpayer and his transferees.[14]

 There are analogous situations under the Code where voluntary unilateral action by the taxpayer-transferor tolls the statutory period as against his transferee. For example, an appeal to the Tax Court by the taxpayer suspends the limitation period [15]—it also suspends the period for suits against his transferee.[16] Likewise a waiver agreement executed by the transferor extending the limitation period for assessments is valid as against his transferees.[17]

 The action was timely commenced. The motions are denied.

 That part of the motion which seeks to vacate the deposition of the defendants because the person before whom it is to be taken is in the employ of the plaintiff is granted to the extent of requiring that it be conducted before a person who is not in the employ of the plaintiff.

Settle order on notice.

11. Cf. United States v. Markowitz, D.C. N.D.Calif., 34 F.Supp. 827, 830: "The statutory period of limitations, therefore, as referred to in defendant's offer in compromise, must be construed to apply to the basic six-year period as extended by agreement pursuant to the limitation statute, unless it can be said that Subdivision (2) of Section 276(c), supra, is applicable only to a taxpayer and not to the transferee of the assets of a taxpayer. There is no reasonable basis to assume that Congress, in using the word 'Taxpayer', intended to exclude the transferee of the assets of a taxpayer and liable for the tax as such, from the provisions of a portion of the statute, thereby creating a shorter statutory period for the commencement of an action for the tax against him than is provided for the commencement of the action against the taxpayer himself."

12. Loewer Realty Co. v. Anderson, 2 Cir., 31 F.2d 268, 269; see also E. I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788; United States v. Whited & Whcless, 246 U.S. 552, 561, 38 S.Ct. 367, 62 L.Ed. 879.

13. E. I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788.

14. American Equitable Assur. Co. of New York v. Helvering, 2 Cir., 68 F.2d 46, 47.

15. 26 U.S.C. § 277; Green Spring Dairy v. Commissioner, 4 Cir., 208 F.2d 471, 476.

16. American Equitable Assur. Co. of New York v. Helvering, 2 Cir., 68 F.2d 46.

17. Rite-Way Products, Inc., 12 T.C. 475; Anne Gatto, 20 T.C. 830.