**FEDERAL ELECTION COMMISSION,**
**Plaintiff,**

v.

**THE CHRISTIAN COALITION,**
**Defendant.**

**Civil Action No. 96-1781 (JHG).**

United States District Court,
D. Columbia.

May 13, 1997.

[redacted]

Lawrence Mark Noble, Richard Blair Bader, Stephen E. Hershkowitz, Federal Election Com'n, Washington, DC, for plaintiff.

Frank Myers Northam, Webster, Chamberlain & Bean, Washington, DC, for defendant.

## *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

Presently pending is Defendant Christian Coalition's Motion for Partial Dismissal

("Motion to Dismiss").[1] Upon consideration of the Motion to Dismiss, Plaintiff Federal Election Commission's (the "FEC" or "Commission") opposition, the Christian Coalition's reply and the entire record in this matter, the motion will be granted in part and denied in part.

## I. Background

On July 30, 1996, the FEC filed its Complaint alleging that the Christian Coalition had engaged in a pattern of activity to influence the election of candidates for federal office.[2] In particular, the FEC alleges that the Christian Coalition, directly and through its state affiliates, made expenditures of corporate treasury funds to produce and distribute voter guides, "scorecards" and direct mail, and to engage in voter identification, "get-out-the-vote" and other public communication efforts, all in support of or in opposition to various federal candidates and political committees.

The FEC was notified of the Christian Coalition's activities when, on February 27, 1992, the Democratic Party of Virginia filed an administrative complaint averring that the Christian Coalition had violated the Federal Election Campaign Act, 2 U.S.C. §§ 431 *et seq.* (the "FECA" or the "Act"). Complaint ¶ 6. The FEC then initiated the procedures of the FECA, 2 U.S.C. § 437g(a)(1), including notification to the Christian Coalition of the allegations. *Id.* On September 15, 1992, the FEC, by the affirmative votes of at least four of its members, found reason to believe that the Christian Coalition had violated the Act and authorized the initiation of an investigation. *Id.* ¶ 8.

On October 21, 1992, a second administrative complaint alleging that the Christian Coalition had violated the Act was filed with the FEC. *Id.* ¶ 9. This complaint was filed by the Democratic National Committee. Again, pursuant to the procedures of the FECA, the FEC notified the Christian Coalition of the allegations and provided it with a copy of the administrative complaint, to which the Christian Coalition responded on January 4, 1993. *Id.* On July 20, 1993, the FEC merged the two administrative complaints, found reason to believe that the Christian Coalition had violated the Act, and authorized an investigation. *Id.* ¶ 10.[3]

On September 26, 1995, the FEC found probable cause to believe that the Christian Coalition had violated the Act. *Id.* ¶ 15. After attempts at informal conciliation failed, the FEC was authorized by its Commissioners, on May 7, 1996, to file suit. *Id.* ¶ 16. The instant Complaint was filed shortly thereafter.

The FEC's Complaint contains three causes of action. The first cause of action relates to the Christian Coalition's "in-kind" contributions to candidates and campaigns for federal office during the 1990, 1992 and 1994 federal election cycles in violation of 2 U.S.C. § 441b. *Id.* ¶ 24. The FEC contends that the Christian Coalition coordinated these expenditures ("in kind" contributions) with (1) the Bush–Quayle '92 primary and general election committees, *id.* ¶¶ 25–26; (2) the Helms for Senate Committee for the 1990 election, *id.* ¶¶ 28–30; (3) the Oliver North for U.S. Senate Committee for the 1994 election, *id.* ¶¶ 31–33; (4) the Inglis for Congress Committee, *id.* ¶¶ 34–36; and (5) the J.D. Hayworth for Congress Committee for the 1994 election, *id.* ¶¶ 37–39.

The second cause of action alleges that the Christian Coalition violated the Act through its coordination, cooperation and/or consulta-

---

1. Because this matter is before the Court on a motion to dismiss, the Court assumes true the facts alleged by the FEC. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kowal v. MCI,* 16 F.3d 1271, 1276 (D.C.Cir.1994).

2. This case is presently in discovery, which is set to close on July 10, 1997. *See* Scheduling Order of October 16, 1996 (setting discovery closure date of May 22, 1997); Order of April 17, 1997 (granting the FEC's request for discovery extension over objection by the Christian Coalition).

3. On October 26, 1993, following the issuance of *FEC v. NRA Political Victory Fund,* 6 F.3d 821 (D.C.Cir.1993), *dismissed for want of jurisdiction,* 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994), the FEC reconstituted itself as a six-member commission without *ex officio* members, thereby conforming to the Court of Appeals' decision. Complaint ¶¶ 11–12. On April 5, 1994, the reconstituted Commission again found reason to believe that the Christian Coalition had violated the FECA. *Id.* ¶ 13.

tion with the National Republican Senatorial Committee ("NRSC") and its candidates in the production and distribution of five-to-ten million voter guides in seven states in connection with the November 1990 election for seats in the United States Senate. *Id.* ¶¶ 40–43.

The third cause of action contends that during the 1992 and 1994 election cycles, the Christian Coalition made a series of expenditures for public communications that expressly advocated the election or defeat of various candidates for the United States Congress. *Id.* ¶¶ 44–50. This cause of action contains three principal allegations. First, the FEC states that the Christian Coalition, through its subordinate state affiliates, made expenditures to support a conference at which Dr. Ralph Reed (who was at that time the defendant's Executive Director) expressly advocated the defeat of U.S. Representative Pat Williams. *Id.* ¶ 46. Second, the plaintiff alleges that the defendant made expenditures to prepare and distribute a direct mail package with a "scorecard," which included a cover letter signed by Pat Robertson stating, "This SCORECARD will give America's Christian voters the facts they will need to distinguish between GOOD and MISGUIDED Congressmen." *Id.* ¶ 48. And third, the FEC avers that, prior to the July 9, 1994, primary election in Georgia, the Christian Coalition made expenditures to prepare and distribute a cover letter and congressional "scorecard," which advocated the re-election of Representative and Speaker of the House Newt Gingrich: "The only incumbent Congressman who has a Primary election is Congressman Newt Gingrich—a Christian Coalition, Inc. 100 percenter." *Id.* ¶ 50. The FEC further alleges that these expenditures were made in violation of 2 U.S.C. § 441b, and that the Christian Coalition also violated the law by failing to report these expenditures under 2 U.S.C. § 434(c).

Approximately three months into discovery, the defendant filed the instant Motion to Dismiss seeking partial dismissal of the Complaint.

## II. Discussion

The Christian Coalition seeks to dismiss that portion of the first cause of action that relates to activities in support of Helms for Senate during the 1990 general election and that portion of the second cause of action in support of various candidates for the U.S. Senate during the 1990 general election. *See* Motion to Dismiss at 1. As grounds, the defendant contends that the FEC is time-barred from pursuing action based on events that occurred more than five years prior to the filing of the Complaint. Two principal issues must be addressed to resolve the Motion to Dismiss: (1) whether a discovery rule applies to the statute of limitations applicable to this suit under the FECA, tolling the provisions of the statute of limitations until the FEC knew or should have known of the underlying violations; and (2) whether the applicable statute of limitations bars the FEC from obtaining both legal and equitable relief.

The FECA does not contain an internal statute of limitations. The applicable statute of limitations is provided under 28 U.S.C. § 2462 [4]—a point the parties do not, nor could they, reasonably dispute. *See FEC v. Williams,* 104 F.3d 237, 240 (9th Cir.1996), *pet. for reh'g and suggestion for reh'g en banc filed on other grounds,* No. 95–55320 (Feb. 5, 1997); *FEC v. National Right to Work Comm.,* 916 F.Supp. 10, 13 (D.D.C. 1996); *FEC v. National Republican Senatorial Committee,* 877 F.Supp. 15, 17 (D.D.C. 1995). *See generally 3M Co. (Minnesota Mining and Mfg.) v. Browner,* 17 F.3d 1453, 1455–57 (D.C.Cir.1994), *reh'g and suggestion for reh'g en banc denied,* No. 92–1126 (May 9, 1994). They do, however, contest whether the statute of limitations was tolled during the period prior to the filing of the administrative complaint by the Democratic Party of Virginia, which the FEC contends made it

---

4. This section provides:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be found thereon.

aware of the underlying violations. *See* FEC's Opposition at 5.

The FEC argues that, because its investigatory powers are limited under the FECA, unless and until allegations of wrongdoing are reported to it, it has no way of knowing of illegal conduct such as the Christian Coalition's. *See id.* at 5. Quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), the FEC encourages this Court to adopt a discovery rule for 28 U.S.C. § 2462: "when the Christian Coalition committed these violations of the Act, the Commission 'remain[ed] in ignorance of it without any fault or want of diligence or care on [its] part'. In these circumstances, 'the bar of the statute does not begin to run until the [violation] is discovered, though there be no special circumstances or efforts on the part of the party committing the [violation] to conceal it from the knowledge of the [agency]. This equitable doctrine is read into every federal statute of limitation.'" *Id.* at 5–6 (alterations added by the FEC, internal citations omitted by this Court).

 The FEC's argument is a plausible one, particularly in light of the procedural strictures and weak enforcement tools with which Congress has burdened this beleaguered federal agency. However, the problem faced by the FEC is that, in *3M v. Browner,* the Court of Appeals in this Circuit rejected just such an argument:

> An agency may experience problems in detecting statutory violations because its enforcement effort is not sufficiently funded; or because the agency has not devoted an adequate number of trained personnel to the task; or because the agency's enforcement program is ill-designed or inefficient; ***or because the nature of the statute makes it difficult to uncover violations;*** or because of some combination of these factors and others.

17 F.3d at 1461 (emphasis added).

While the FEC attempts to distinguish *3M v. Browner* by pointing out that its statutory authority under the FECA is more limited than the EPA's under the Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.,* the statute that was at issue in *3M v. Browner,*

the Court of Appeals' opinion makes clear that such differences are of no moment:

> An agency's failure to detect violations, for whatever reasons, does not avoid the problems of faded memories, lost witnesses and discarded documents in penalty actions brought decades after alleged violations are finally discovered. *Most important, nothing in the language of § 2462 even arguably makes the running of the limitation period turn on the degree of difficulty an agency experiences in detecting violations.*

*Id.* (emphasis added).

While the Court of Appeals suggested that fraudulent concealment might toll the applicable statute of limitations, *see id.* at 1461 n. 15 (citing *Holmberg,* 327 U.S. 392, 66 S.Ct. 582), the FEC has not alleged that its inability to discover the events at issue stemmed from acts of fraudulent concealment by the Christian Coalition.

In sum, the law of this Circuit is clear and the facts, as pled by the FEC, control: the FEC's cause of action accrued when the events at issue occurred, and 28 U.S.C. § 2462 operates according to its terms to bar the enforcement of any civil fine, penalty or forfeiture for events that occurred more than five years before the Complaint was filed.

The less-settled question is whether 28 U.S.C. § 2462 also operates to bar equitable relief afforded under the Act. Upon considering the text of § 2462, the parties' arguments and the relevant case law, this Court concludes that it does not.

 The Supreme Court "long ago pronounced the standard: 'Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.'" *Badaracco v. Comm'r of the Internal Revenue,* 464 U.S. 386, 391, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984) (quoting *E.I. Du Pont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924)); *see also United States v. Whited & Wheless, Ltd.,* 246 U.S. 552, 561, 38 S.Ct. 367, 368, 62 L.Ed. 879 (1918) (quoting *United States v. Nashville, Chattanooga & St. Louis Ry. Co.,* 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81

(1886)). By its own terms, the statute bars only legal relief: "the enforcement of any civil fine, penalty or forfeiture." 28 U.S.C. § 2462; *see FEC v. National Republican Senatorial Committee,* 877 F.Supp. at 21. The Supreme Court also instructs us that "statutes of limitation are not controlling measures of equitable relief." *Holmberg,* 327 U.S. at 396, 66 S.Ct. at 584.

[4] Construing this statute of limitation narrowly, as the Court must, and in light of its plain text, which is ordinarily controlling, this Court declines to accept the Christian Coalition's argument. While 28 U.S.C. § 2462 may protect the Christian Coalition from being assessed a civil fine, penalty or forfeiture for conduct in violation· of the FECA that occurred five years before the Complaint was filed, this general statute of limitation provides no such shield from declaratory or injunctive relief.

[5] The authority cited by the Christian Coalition, and relied upon by several other courts, is not sufficient to overcome either the statute's plain language or the clear interpretive commands by the Supreme Court. The defendant relies upon *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947), and *Russell v. Todd,* 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940), for the broad proposition that "where the legal remedy is barred by the statute of limitations, equitable relief should likewise be withheld." Motion to Dismiss at 13. A cursory reading of both cases makes clear that the Christian Coalition's reliance is misplaced. Neither *Cope* nor *Russell* involved a limitation on an action by the United States. And, both cases involved the interplay between federal rights and state statutes of limitations—issues not present in a suit brought under the FECA.

[6] More importantly, but perhaps less widely understood in a modern legal world in which courts of law and equity have merged to the point of making their distinctions almost invisible, *see* 1 Pomeroy's Equity Jurisprudence §§ 42a, 43 (5th ed.1941), both *Cope* and *Russell* were based on the equitable concept of "concurrent jurisdiction." In equity jurisprudence, this is a concept in which the "law must, through its judicial procedure, give *some* remedy of the same general nature as that given by equity, but this legal remedy is not, under the circumstances, full, adequate, and complete. The fact that the legal remedy is not full, adequate, and complete is, therefore, the real foundation of this *concurrent* branch of the equity jurisdiction." *Id.* § 139 (emphasis in original). Thus, concurrent jurisdiction lies where the right is cognizable by the law and the remedy is of the same kind, such as a statutory right to assess a civil fine or penalty based upon a statutory violation. *See id.*

[7] On the other hand, injunctive relief is based solely on equity's "exclusive jurisdiction." *See id.* §§ 136, 138. "The exclusive jurisdiction includes ... all civil cases in which the remedy to be granted ... is purely equitable, or one which is recognized by courts of equity, and not by courts of law. In the cases of this class, the primary right which is maintained, redressed or enforced is sometimes equitable and is sometimes legal; but the jurisdiction depends, not upon the nature of these rights, estates, or interests, *but wholly upon the nature of the remedies."* *Id.* § 138 (emphasis added). This is true even where the primary right is legal in nature and "for the violation of which [courts] give *some* remedy." *Id.* (emphasis in original).

The Supreme Court in *Russell,* upon which the defendant mistakenly relies, explains the crucial distinction in terms of the applicability of statutes of limitation:

"[W]hen the jurisdiction of the federal court is concurrent with that at law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations.... But where the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, state statutes of limitations barring actions at law are inapplicable, and in the absence of any ·state statute barring the equitable remedy in like cases, the federal court is remitted to and applies the doctrine of laches as controlling."

309 U.S. 280, 60 S.Ct. 527 (citations omitted).

This important distinction makes clear why *Cope* and *Russell* do not support the Chris-

tian Coalition's argument. *Cope* explains that "it is only the *scope* of relief sought and the multitude of parties sued which give equity *concurrent jurisdiction* to enforce the legal obligation here asserted." 331 U.S. at 463–64, 67 S.Ct. at 1341 (emphasis added). The nature of the relief sought in *Cope*—assessing the liability of the stockholders of insolvent banks—was a legal obligation. The *concurrent* jurisdiction stemmed from the *scope* of that relief (i.e., bringing the class of stockholders in one suit), and it was invoked to enforce that legal obligation—not to provide a remedy that was within its exclusive jurisdiction (i.e., an injunction). *See* 1 Pomeroy's Equity Jurisprudence, *supra* § 139. Only in such a "concurrent jurisdiction" situation can the rule of *Cope* be read to require a court to withhold relief because a statute of limitations bars the legal remedy. Where the jurisdiction is "exclusive," such as where the nature of the remedy is an injunction that is independent from the legal relief available, then the statute of limitations applicable to the legal relief is inapplicable to the injunctive relief. *Russell,* 309 U.S. 280, 60 S.Ct. 527. "And so, a suit in equity may lie though a comparable cause of action at law would be barred." *Holmberg,* 327 U.S. at 396, 66 S.Ct. at 584.

Under the FECA, the Commission has the authority to seek injunctive relief wholly separate and apart from its authority to seek a legal remedy. *See* 2 U.S.C. § 437g(a)(6). As an exclusively equitable remedy, the declaratory and injunctive relief sought by the FEC against the Christian Coalition are not subject to the rule of *Cope.* The cases cited by the defendant which hold to contrary do not address the historical underpinnings of equity or the limitations of *Cope.* In any event, those cases are neither binding nor persuasive.

### III. Conclusion

Accordingly, it is hereby

**ORDERED** that the Motion to Dismiss is granted in part and denied in part; it is

**FURTHER ORDERED** that the motion is granted to bar the assessment of "any civil fine, penalty, or forfeiture" for events occurring prior to five years before the filing of the Complaint in this matter; and it is

**FURTHER ORDERED** that the motion is denied as to the injunctive or declaratory relief that the FEC seeks pursuant to this Complaint.

IT IS SO ORDERED.