IZAAK WALTON LEAGUE OF AMERICA, a not for profit corporation, Plaintiff,

v.

George W. ST. CLAIR et al., Defendants, and
Robert E. Gardner et al., Additional Defendants.

No. 5–69 Civ. 70.

United States District Court, D. Minnesota. Fifth Division.

May 16, 1972.

See also D.C., 313 F.Supp. 1312.

forth in the amended pleading, the same still would not constitute a claim upon which relief can be granted, then leave to file the amendment should be denied. Put another way, if the amendment were allowed and on motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure the court would grant the motion since the question presented is solely one of law, then the amendment should not be permitted. This latter is the position taken by the defendants St. Clair and his various lessors.[2]

Popham, Haik, Schnobrich, Kaufman & Doty, by Raymond A. Haik, Minneapolis, Minn., for plaintiff.

Robert G. Renner, U. S. Atty. by Arthur Smith, Dept. of Justice, Washington, D. C., for defendants Hardin, Cliff and Rupp.

Warren Spannus, Atty. Gen., State of Minn. by Philip Olfelt, St. Paul, Minn., Dept. of Conservation, for the State of Minn.

Sullivan, Hanft, Hastings, Fride & O'Brien, by William P. O'Brien and Gaylord Swelbar, Duluth, Minn., for defendants St. Clair and Yawkey.

NEVILLE, District Judge.

Presented to the court by the defendant Herbst, successor to defendant Leirfallom as Commissioner of Natural Resources for the State of Minnesota[1] is a motion for leave to amend to his cross-claim, filed some five months earlier. The court is aware that under Rule 15 of the Federal Rules of Civil Procedure such an amendment should be "freely given when justice so requires". If, however, assuming the truth, validity and ability to prove the allegations set

By way of background, plaintiff Izaak Walton League of America, a non-profit Illinois corporation, instituted a declaratory judgment action against numerous defendants seeking *inter alia* to enjoin defendant St. Clair and his lessors from entering upon or crossing public lands or water in the area known as the Boundary Waters Canoe Area (BWCA) in Northern Minnesota for the purpose of drilling or exploring for, or removing minerals that may there be present. Its position is that various Acts of Congress and executive orders and regulations issued and adopted pursuant thereto prohibit such activity in the BWCA.

Plaintiff also seeks to enjoin the other defendants, employees of the Federal government and of the State of Minnesota, from permitting defendant St. Clair from so doing. St. Clair's lessors who claim to be owners of certain mineral rights in the BWCA have now been made additional parties defendants. The BWCA is managed as public land by the United States, a portion of the National Wilderness Preservation System in Minnesota, and is located along and near the Canadian Boundary.

The proposed amendment to the cross-claim alleges that all or substantially all of the lands whose mineral rights are owned or leased by defendant

---

1. The position of the Commissioner is supported by the plaintiff.

2. The Federal defendants have submitted no brief and apparently have not taken a position one way or the other.

St. Clair were initially separated from the public domain through fraudulent or unlawful acts of the original patentees and of Federal officers, agents, or employees. This if allowed, would inject a new claim into the case so that in addition to its contention that Federal and State laws prohibit drilling and exploring for minerals in the BWCA, the Commissioner would contend either that the title to the various pieces of land is still in the United States because the patents thereto were obtained by fraudulent practices and are voidable so that no individual has any rights therein and thereunder, or that the title under either a constructive trust or a public trust theory is held by the present owners for the benefit of the public. Obviously, if St. Clair is attempting to drill on or to explore for minerals in lands, the title to which is not in him or his lessors, he is a mere trespasser and the court need not reach the question as to the effect of Federal and State laws on the BWCA; for whatever their applicability or effect, if St. Clair or his lessors have no title he can be excluded on that basis and the lawsuit dismissed.

Defendant St. Clair opposes the motion to amend on the grounds that (1) the State Commissioner has no standing and is not a proper party to question the defendants' titles on any legal theory; (2) the State's claim is untimely raised based upon the Federal statute of limitations, 43 U.S.C. § 1166 and various Minnesota limitation statutes; and (3) Rule 15 of the Federal Rules of Civil Procedure does not require the court to grant leave of court to amend when the amendment would be futile.

The facts underlying the proposed amendment were obtained by a scholarly researching in the United States Archives, the files of the Minnesota State Historical Society and of various county officials. A very lawyer-like presentation has been made. For the purposes of the motion, and not controverted by St. Clair, the facts are essentially as follows:

The lands in the BWCA were originally removed from the public domain in the latter part of the 19th Century under provisions of various Federal statutes[3] which were intended for the most part to put settlers on the land. All of those statutes placed limitations on acreages which might be acquired, required residence for a period of time upon and improvement to the land, limited the number of entries any one individual could make and/or contained other restrictions aimed at preventing land speculation. The lands now in the BWCA were under the jurisdiction of the Federal land office in Duluth, Minnesota and apparently were the subject of repeated mineral speculation "booms" in the last quarter of the 19th Century. Numerous exhibits attached to the State's motion tend to show that a system involving land brokers and false entries by hired or "dummy" entrymen pervaded the acquisition of public lands in the Duluth district in the period from the year 1885 through at least 1900. The exhibits include reports by various officials of the General Land Office in Washington, D. C. which contain statements concerning wholesale fraud in and on the Duluth office. One of the brokers was a John Segog, a dealer in pine and iron lands and later in 1914 an incorporator of the Michigaumi Iron Company, one of the present defendants and a lessor of St. Clair. Although occasion-

---

3. These laws are as follows: The Cash Purchase Act of 1820 (Chapter LI, Act of April 24, 1820, 3 U.S.Stat. 566, 567, as amended); the Preemption Act of 1830 (Chapter CCVIII, Act of May 29, 1830, 4 U.S.Stat. 420, 421, as amended); the Homestead Act of 1862 (Chapter LXXV, Act of May 20, 1862, 12 U.S.Stat. 392–394, as amended); and the Timber and Stone Act (Chapter 150, Act of June 3, 1878, 20 U.S.Stat. 88, 89, as amended, particularly by Chapter 375, Act of August 4, 1892, 27 U.S.Stat. 348).

al attempts by the United States to annul fraudulently obtained patents were successful, most patents have gone unchallenged to the present day. Eventually and perhaps as a result of the widespread fraud, hundreds of thousands of acres were withdrawn from entry by the United States and later formed the nucleus of the Superior National Forest, within which lies the BWCA.

The Commissioner would expect to be able to show, based on exhibits and affidavits he has attached to his moving papers, that the Secretary of Interior in 1885 in a report to Congress referred to the fact that out of the Duluth land office 4,300 homestead entries had been made with less than 100 of the settlers living on the land; that Receiver Presnell in the Duluth land office acted as attorney for others in procuring fraudulent land entries; that in 1894, special agent LeSuer, on a eight-day trip in the Ely area saw no man in 150 miles of travel despite seeing many shanties; that in his opinion only one entry in 1,000 was good; that Segog Brothers, land dealers in Duluth, ultimately held a large number of titles to or mortgages on land and were incorporators in 1914 of Michigaumi Iron Company, one of the defendants in the case at bar; that United States Census figures for the year 1890 show far less population than the number of land office entries; that alleged homestead entries were transferred on an average within 1.2 months of date of proof. There is no question but that the Commissioner presents a prima facie showing of fraud. Also produced is a tabulation containing some 600 patents, more or less, which are the underlying title documents covering the present St. Clair leased land and which he wishes to challenge.

The first matter to be noted is 43 U. S.C. § 1166 a statute of limitations originally enacted in 1891 which reads:

"Suits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents."

■ It is thus crystal clear, and the Federal government does not argue to the contrary, that its right to challenge the patents is barred. While there is authority that where fraud is present the statute does not begin to run until it is discovered, Exploration Co. v. United States, 247 U.S. 435, 38 S.Ct. 571, 62 L. Ed. 1200 (1918); Bailey v. Glover, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636 (1875), there can be no question here based on the Commissioner's own showing, that the Federal government, including the Secretary of Interior in 1885 was aware of the fraud and the conditions and transactions in the Duluth land office. See United States v. Christopher, 71 F.2d 764 (10th Cir. 1934). Certainly the evidence of fraud was made a public record at that time and some years thereafter and was not concealed from the State nor from anyone else.

■ The question then is, whether if the Federal government cannot attack patents, the Minnesota State Commissioner has standing to challenge the 600 some fraudulently procured patents. In this court's opinion he does not. Northern Pacific Ry. v. McComas, 250 U.S. 387, 39 S.Ct. 546, 63 L.Ed. 1049 (1919); Fisher v. Rule, 248 U.S. 314, 39 S.Ct. 122, 63 L.Ed. 263 (1919). Were the challenge to be successful, title could not inure to nor vest in the State of Minnesota in any event but would revert to the United States. The Commissioner himself in effect so agrees. Quoting from his brief:

". . . In the present case the question is who, if anyone, can represent the public interest in regard to the allegations contained in the State's amendment. In the present case *the State is not alleging, in a proprietary capacity, a superior right to defendant St. Clair and his lessors' lands.* The State acting through its Commissioner of Natural Resources, is alleging that it has a right and a duty to assert that the *public* has sufficient interest in the property in question which is

superior to that of St. Clair and his lessors and which fulfills the spirit of the requirements of Fisher v. Rule, supra, quoted by defendants. . . ." at pp. 16–17 [emphasis added]

So this is not a case where if a title challenge is successful, the challenger will gain the title. This should put to rest the attempt to amend the cross-claim and without reference to the factual question of whether the present title holders, many holding registered title certificates, are bona fide purchasers and thus have in any event cut off any equitable rights to challenge title. Practically, of course, to allow a challenge now to the patents might put in jeopardy and unsettle thousands of titles in Northern Minnesota and raise havoc with real estate ownership.

In connection with the statute of limitations, the court notes that the six-year statute 43 U.S.C. § 1166 does not apply to an action by the United States to recover against the defrauder the *value* of public lands described in a patent procured through fraud. United States v. Whited & Wheless, 246 U.S. 552, 38 S.Ct. 367, 62 L.Ed. 879 (1918). This claim has not been asserted by the United States and again it would seem that the Commissioner cannot stand in the shoes of the United States in an attempt to do so. He has no derivative rights to sue in the name of the United States. Any proceeds recovered on the foregoing basis would flow to the United States Treasury for the benefit of all the citizens and in any event a money judgment, for which none of the parties ask in their pleadings, would not resolve the injunctive issues raised in this case. For this latter reason, if for no other, the court rejects the Commissioner's suggestion for involuntary realignment of the United States as a plaintiff for this issue.

The Commissioner has advanced an additional theory that because the patents were wrongfully obtained and the whole scheme was born of fraud, the grantees hold the title in trust, either as constructive trustees or under a public trust. Again, were there to be such a holding, it would seem the beneficiary of any constructive trust would of necessity be the Federal government, and not any third party. The concept of a public trust would be applicable were a government or some public body using public lands for uses other than for the benefit of the public. The Commissioner takes the view that he represents the public interest and that as such he has standing and an interest as sort of an equitable beneficiary of the public trust. Worthy as the thought may be, the court does not agree. There are many frauds in the commercial world committed every day, but the State—though having the right on behalf of consumers to enjoin future such conduct and to prosecute for such past conduct—generally does not become a public trustee absent specific statutory authority of privately owned property. Nor does the case of United States v. Whited & Wheless, *supra*, aid this theory.

As the court understands, most if not all of the titles to the mineral rights here involved are registered under the Torrens Act, Minn.Stat. § 508.25(1) which provides that the person named in the certificate shall hold the title "free from all encumbrances and adverse claims . . . excepting . . . liens, claims, or rights arising or existing under the laws or the constitution of the United States, which this state cannot require to appear of record." Thus, a registered title is free of fraud claims between or involving prior title holders including the patent from the United States Government. The Commissioner's motion in effect runs contrary to this statute and cannot avail. A registered title operates against and bars claims of the State as well as others. The Minnesota "40 year statute" would seem not apposite under Wichelman v. Messner, 250 Minn. 88, 83 N.W.2d 800 (1957), holding that statute

inapplicable to the fee simple interest in a mineral estate. The Commissioner attempts an *a fortiori* from this that if the 40 year statute does not apply to severed mineral interests, it should not bar the right of the State to set aside patents procured fraudulently some 75 to 80 years ago or from being beneficiaries of a constructive or public trust. This is a *non sequitur* for all of the various reasons above stated.

 It could perhaps be pointed out that the Commissioner's motion for leave to amend was filed prior to the service and filing of the answers of one of St. Clair's lessors and that therefore the first sentence of Rule 15(a) should govern permitting a pleading to be amended as of course prior to the service of a responsive pleading. Assuming such to be applicable, the court nonetheless would hold that on a proper motion by such lessors the claim or alleged cause of action would be stricken as not stating a claim upon which relief can be granted and a judgment ordered under Rule 54(b) of the Federal Rules of Civil Procedure.