497 F.2d 849
 6 ERC 1554, 4 Envtl. L. Rep. 20,556
 IZAAK WALTON LEAGUE OF AMERICA, Appellee,
v.
George W. ST. CLAIR et al., Appellants.
IZAAK WALTON LEAGUE OF AMERICA, Appellee,
v.
Robert L. HERBST, Commissioner of Conservation of the State
of Minnesota, Appellant.
Earl L. BUTZ et al., Appellants,
v.
IZAAK WALTON LEAGUE OF AMERICA, Appellee.
 Nos. 73-1407, 73-1408 and 73-1409.
 United States Court of Appeals, Eighth Circuit.
 Submitted Feb. 14, 1974.
Decided May 17, 1974.
 
 Eva Datz, Land & Natl. Resources Div., Appellate Sect., Dept. of Justice, Washington, D.C., William P. O'Brien, Duluth, Minn., and Philip Olfelt, Asst. Atty. Gen., Dept. of Natural Resources, St. Paul, Minn., for appellants.
 Raymond A. Haik, Minneapolis, Minn., for appellee.
 Before GIBSON, STEPHENSON, and WEBSTER, Circuit Judges.
 GIBSON, Circuit Judge.
 
 
 1
 The Izaak Walton League of America (hereafter the League) brought this action for declaratory judgment to determine the extent of the mineral rights possessed by George W. St. Clair and his successors in interest[1] and the validity of his attempted exercise of those rights within the Boundary Waters Canoe Area (BWCA).
 
 
 2
 The BWCA, consisting of some one million acres, is a part of Superior National Forest, and is included in the National Wilderness System pursuant to the National Wilderness System Preservation Act of 1964.[2] The League contends that the Wilderness Act precludes any exercise of St. Clair's mineral rights in land within the boundaries of the BWCA. Also named as defendants were the Secretary of Agriculture, the Chief of the United States Forest Service, and the Supervisor of the Superior National Forest, who are responsible for the management of the BWCA, and the Minnesota Conservation Commissioner and Commissioner of Taxation who have various types of jurisdiction over state lands within the BWCA. The State of Minnesota is a nominal defendant since by cross-claim it supports the League's claim against the other defendants in all but one respect.[3]
 
 
 3
 The League also requested injunctions against the federal and state defendants to forbid them granting St. Clair any permits to explore for, drill for, or remove minerals from the BWCA. The District Court[4] held that mining activities were incompatible with the wilderness character of the BWCA. It therefore enjoined St. Clair from any exercise of his mineral rights, and enjoined the federal and state defendants from permitting any exercise by St. Clair of his rights in the BWCA. St. Clair and the federal defendants appeal this decision of the District Court.
 
 
 4
 In addition, the State of Minnesota appeals the District Court's refusal to allow an amendment to its cross-claim against St. Clair. It attempted to show that the lands in which St. Clair claims mineral rights were fraudulently patented under the federal homesteading laws then in effect, and therefore that title to these lands remains in the United States. The District Court denied leave to amend,[5] holding that the statute of limitations[6] bars such an action, and further, that the State lacks standing to assert this claim.
 
 
 5
 This litigation, in the defendant St. Clair's words, is 'born of frustration.' Although Congress has been repeatedly memorialized to appropriate funds to purchase the private mineral rights (this was one of the recommendations of the Selke Committee on Review of the BWCA in 1963 to then Secretary of Agriculture Freeman), Congress has not done so. With the growing demand for minerals and the inability to sell their rights to the Government, the mineral rights owners feel they have no choice but to attempt to exercise them. It is clear from the record that the Forest Service had been expecting such an attempt for several years before the present actions of St. Clair.
 
 
 6
 Within the BWCA, the surface land area is owned in roughly the following percentages: United States, 71.3%; Minnesota, 26.3%; Minnesota counties, 1.4%; and private parties, 1%. This latter figure is steadily declining as more and more land passes from private to federal ownership. The ownership of the underlying mineral rights is in quite different proportions. The United States owns only 44%; the State and counties, the same 26.3% And 1.4% Respectively; while the rights held by private owners amount to 28.3% Of the total area. The Forest Service says that the subsurface private ownership of mineral rights in the BWCA represents a serious problem for the management of the BWCA and recognizes that 'any mineral exploration or extraction would jeopardize the surface resources and wilderness character of the area.'[7]
 
 
 7
 St. Clair, through various lease agreements, accumulated the mineral rights in approximately 150,000 acres of BWCA land, and in 1969 had crews enter the BWCA for preliminary exploratory work. With the permission of the Forest Service, his crew established a base camp, and traveling by canoe undertook surface mineral exploration.[8] Apparently encouraged by the preliminary findings, St. Clair notified the Forest Service in December, 1969, of his intention to send a drill and crew into the BWCA in late December or early January, 1970, to drill four or five test holes.
 
 
 8
 The Forest Service, in response, notified St. Clair that before any permit could be issued he would have to furnish the documents establishing his claimed rights, and that the Forest Service would be looking for any possible way to keep him from carrying out his planned activities in the BWCA. This lawsuit was commenced before St. Clair furnished the requested documentation; the Forest Service sitll has not received the necessary documents; and no administrative determination has been made as to whether a permit should be granted. There have been no additional exploratory activities during the pendency of this lawsuit.
 
 
 9
 St. Clair contends that: (1) federal laws provide specifically for the exercise of mineral rights within the BWCA; (2) the injunction against St. Clair and the federal defendants was improper and further that it lacks necessary specificity; and (3) the decision of the District Court constitutes a constructive taking of his property requiring the Court to determine reasonable compensation.
 
 
 10
 The federal defendants argue that: (1) the doctrine of primary jurisdiction should have been applied, as judicial intervention might be unnecessary if the Forest Service is allowed to rule on the permit application; (2) the Wilderness Act makes specific provision for mining activities compatible with wilderness; and (3) the District Court erred when it found, without a hearing, that 'prospecting' is incompatible with wilderness.
 
 
 11
 The League urges affirmance. It asserts that: (1) the Wilderness Act and other federal and state laws prohibit exploratory mining operations; (2) the federal government has effectively zoned the BWCA to prohibit mining operations; (3) injunctive relief was properly granted; and (4) the doctrine of primary jurisdiction in no way precludes judicial review, especially where the Forest Service has violated its own regulations in allowing St. Clair to use prohibited equipment within the BWCA.
 
 
 12
 The State of Minnesota seeks reversal of the refusal to allow amendment of its cross-claim, asserting that (1) it has standing, and (2) its claims are not barred by the statute of limitations. It can thus readily be seen that there is no shortage of issues raised on appeal; all save the dispositive issue, primary jurisdiction, have been exhaustively briefed and argued. We have, however, determined that the doctrine of primary jurisdiction should have been applied by the District Court and that the question of whether a permit should be issued for exploratory mining operations should first be determined by the Forest Service.
 
 
 13
 The Government argues that judicial review in this case is precluded by the doctrine of primary jurisdiction. While we believe the facts of this case require our determination that primary jurisdiction should be exercised by the Forest Service, we cannot accept the Government's view that judicial review is precluded. Such a contention confuses the doctrine of primary jurisdiction with that of the exhaustion of administrative remedies, which, although similar in some respects, exists for different reasons.[9] See 3 K. Davis, Administrative Law Treatise, 19.01 (1958) (hereinafter cited as Davis). The Supreme Court has distinguished the two doctrines in this manner:
 
 
 14
 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.
 
 
 15
 United States v. Western Pac. R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).
 
 
 16
 In our present case, the League's claim regarding the construction of the Wilderness Act and other federal and state regulatory statutes is a legal issue, properly cognizable in the courts. Yet the factual questions regarding the effect of mining activity upon the wilderness, and whether a permit should issue with restrictions that would be adequate to protect the wilderness quality of the BWCA are those types of questions peculiarly within the competence of the Forest Service, and statutorily delegated to it by the Wilderness Act. Section 1133(d) provides in part:
 
 
 17
 (5) Other provisions of this chapter to the contrary notwithstanding, the management of the Boundary Waters Canoe Area, * * * shall be in accordance with regulations established by the Secretary of Agriculture in accordance with the general purpose of maintaining, without unnecessary restrictions on other uses, including that of timber, the primitive character of the area, particularly in the vicinity of lakes, streams, and portages * * *.
 
 
 18
 The Secretary, pursuant to this authority, promulgated 36 C.F.R. 251.85 (1971) governing the BWCA. Section 251.85(e) provides in pertinent part:
 
 
 19
 To the extent not limited by the Wilderness Act, the Chief, Forest Service, may prescribe measures * * * necessary to protect and administer the Area; * * * and may require permits for, or otherwise limit or regulate, and use of National Forest land * * *.
 
 
 20
 A permit to mechanically prospect within the BWCA is required by 441.13 of the BWCA Management Handbook, and 36 C.F.R. 251.15 (1971) requires any holder of reserved mineral rights in federal land to apply for and receive a permit before any mining activities may be carried out. Therefore, St. Clair had no right to mine or mechanically prospect for minerals within the BWCA until he had completed application for a permit and the Forest Service had determined whether a permit should issue. In making this determination we must presume that the Forest Service would determine whether or not the planned mining activities were compatible with the wilderness character of the area, and it is this determination upon which a court should give the Forest Service the opportunity to make a record. As Davis, supra 19.01 at 6 states:
 
 
 21
 The choice that lies behind the doctrine is between judicial action taken without the benefit of what the agency has to offer to the particular problem, and judicial action that fully takes into account the administrative position on the particular problem.
 
 
 22
 Rather than taking 'judicial notice' that St. Clair's planned activities were incompatible with the wilderness quality of the BWCA, without a hearing and without the benefit of a Forest Service record on the question, the District Court should have stayed the proceedings until after Forest Service action on the permit application, or dismissed the case without prejudice to any suit commenced after final Forest Service action. Although the League's legal claims cannot be decided by the Forest Service, recourse to the courts will be available after final Forest Service action. Allowing the Forest Service to initially determine whether any mining activity will be allowed, consistent with maintaining the wilderness character of the BWCA, would provide the necessary factual record for the District Court's determination of the legal issues presented.
 
 
 23
 As the necessary documents in support of a permit application have not been filed with the Forest Service, and there is no indication as to when or whether the permit application will be pursued, the cause will be remanded to the District Court with instructions that the Forest Service be allowed to determine upon proper application whether a permit should be issued. The District Court shall, in its discretion, determine whether the present suit should be stayed pending completion of Forest Service action, or whether the suit should be dismissed without prejudice to the institution of any later suit.
 
 
 24
 Having determined that the judgment of the District Court must be reversed and the case remanded, we express no opinion as to the correctness of the District Court's decision on the other issues raised by St. Clair, the League, and the federal defendants.
 
 
 25
 Further, we think the posture of the case at the time of the State's motion to amend requires our approval of the District Court's refusal to allow amendment. The State has made no clear showing of an abuse of discretion in refusing to allow amendment. We, of course, recognize that Rule 15, Fed.R.Civ.P. requires that leave to amend be freely given. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 3 Moore's Federal Practice P15.02, P15.08 (2nd ed. 1974) (hereinafter cited as Moore). The allowance of leave, however, lies within the discretion of the trial court, Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), and is reviewable only for an abuse of discretion. Gallon v. Lloyd-Thomas Co., 264 F.2d 821, 823 (8th Cir. 1959); Moore, supra P15.08 (4).
 
 
 26
 The original cross-claim by the State was filed March 9, 1970. The case was progressing towards trial upon the Wilderness Act and zoning theories advanced by the League and supported by the State. The State did not file its motion to amend until August 19, 1971, some 17 months after its original pleading. This claim of the State injected new issues; and the attempt to prove fraud for each of the parcels of land held by St. Clair would have required extensive preparation and consumed voluminous amounts of trial time to the detriment of a speedy resolution of the case. The refusal to allow amendment is affirmed.
 
 
 27
 However, we do not decide whether the State has standing or the fraud claim is barred by the statute of limitations; resolution of these issues should await their presentation in an appropriate action. We do note that although 43 U.S.C. 1166 does bar an action to annul patents, it has been found not to bar actions to impose a constructive trust upon lands fraudulently obtained, United States v. Carbon County Land Co., 46 F.2d 980 (10th Cir. 1931), aff'd sub nom. Utah v. United States, 284 U.S. 534, 52 S.Ct. 232, 76 L.Ed. 469 (1932); United States v. Carbon County Land Co., 9 F.2d 517, 519 (8th Cir. 1925), aff'd sub nom. Independent Coal & Coke Co. v. United States,274 U.S. 640, 47 S.Ct. 714, 71 L.Ed. 1270 (1927); Milner v. United States,228 F. 431 (8th Cir. 1915), appeal dismissed, 248 U.S. 594, 39 S.Ct. 132, 63 L.Ed. 437 (1918), or to recover the value of the lands fraudulently obtained, United States v. Whited & Wheless, 246 U.S. 552, 38 S.Ct. 367, 62 L.Ed. 879 (1918).
 
 
 28
 The cause is reversed and remanded with directions that the Forest Service be allowed to determine, upon proper application, whether a permit should be granted; and, of course, St. Clair is not at liberty to explore or prospect without a permit from the Forest Service. The District Court may, in its discretion, stay proceedings in the present suit or dismiss without prejudice to any later action. Each party shall bear its or his own costs on appeal.
 
 
 
 [1]
 George W. St. Clair is now deceased and his successors in interest are named in the suit. Reference to St. Clair in the opinion includes his successors in interest
 
 
 [2]
 16 U.S.C. 1131 et seq., popularly known as the Wilderness Act
 
 
 [3]
 While the League contends that mining activities are totally barred within the BWCA, the State contends that there may be mining activity in the event of a national emergency
 
 
 [4]
 The Honorable Philip Neville, now deceased, United States District Judge for the District of Minnesota. His opinion is reported at 353 F.Supp. 698 (D.Minn.1973)
 
 
 [5]
 Izaak Walton League v. St. Clair, 55 F.R.D. 139 (D.Minn.1972)
 
 
 [6]
 43 U.S.C. 1166, which provides:
 Suits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents.
 
 
 [7]
 Draft Boundary Waters Canoe Area Management Plan at 20. The Draft also proposes to 'prohibit insofar as legally possible all commercial mining exploration and extraction.' Id. at 21
 
 
 [8]
 The defendants characterize the activity as 'prospecting' while the League says they were engaged in 'mining activity.' Whatever the connotations of these terms, from the record it appears that no harm to the wilderness character of the BWCA ensued from these activities. Although the crews did carry prohibited mechanical equipment into the BWCA, this was done without the knowledge or consent of the Forest Service
 
 
 [9]
 The Government cites five cases to support its argument that primary jurisdiction precludes judicial review. All but one deal with exhaustion. Dow Chemical Co. v. Ruckelshaus, 477 F.2d 1317 (8th Cir. 1973) 'exhaustion'; Bankers v. Village of N. Palm Beach, 469 F.2d 994 (5th Cir. 1972), cert. denied, 411 U.S. 916, 93 S.Ct. 1543, 36 L.Ed.2d 307 (1973) 'ripeness'; United States v. Consolidated Mines & Smelting, 455 F.2d 432 (9th Cir. 1971) 'exhaustion'; Sterling Drug, Inc. v. F.T.C., 146 U.S.App.D.C. 237, 450 F.2d 698 (1971) 'exhaustion'; Lockhart v. United States, 420 F.2d 1143 (9th Cir. 1970) 'exhaustion'