ANDERSON *v.* SECURITY MILLS *et al.*

(*Knoxville*, September Term, 1939.)

Opinion filed November 25, 1939.

Roy H. Beeler, Attorney-General, and Dudley Porter, Jr., Assistant Attorney-General, for Commissioner of Finance and Taxation.

Grimm & Tapp and Joel H. Anderson, all of Knoxville, for executor.

. Mr. Special Justice W. T. Kennerly delivered the opinion of the Court.

John H. Mauney, a resident of Knox County, died testate June 18, 1938. The complainant, Joel H. Anderson, is the Executor of his estate. This cause was instituted in the Chancery Court for the purpose of winding up Mr. Mauney's estate as insolvent.

For the year 1935 Mr. Mauney filed no income tax re-

turn with the Commissioner of Finance & Taxation as required by the Hall Income Tax Law. Chapter 20 of the Acts of 1931, Second Extra Session. During the tax year of 1935, Mr. Mauney had a taxable income of $6,649.09, which was subject to five per cent income tax, amounting to $332.45.

On or about March 24, 1939, Mr. Mauney's default came to the knowledge of the Commissioner of Finance & Taxation, and he issued a citation to the Executor to show cause why the estate should not be assessed taxes upon said amount. The Executor resisted, denying the right of the State to assess, pleading the Statute of Limitations contained in the Hall Income Tax Law. The Commissioner made the assessment after a hearing pursuant to the citation.

Thereupon, the State filed an intervening petition in the cause averring the estate of Mr. Mauney owed $332.45 taxes and interest thereon to May 27, 1939, $53.19, making a total of $385.64. It prayed that this claim be allowed and ordered paid out of the assets of the estate as a preferred indebtedness.

The Executor filed an answer averring that no legal assessment of income tax for the year 1935 was ever made against Mr. Mauney or against his estate, and pled the Statute of Limitations contained in the Hall Income Tax Law in this language:

"The Executor alleges that the State of Tennessee had no power; authority or right to assess the estate of John H. Mauney in the year 1939 for income tax which may have accrued in the year 1935, and he pleads and relies on the Statutes of Limitations contained in the Code of Tennessee as follows:

" 'Such citations may be issued for the purpose of making or revising, correcting and/or increasing assess-

ments and/or returns or reports of persons for the year in which such citation may be issued and/or three years preceding such year, but no further or otherwise.' (Section 1123.22).

"The Executor accordingly denies that the estate of John H. Mauney is indebted to the State of Tennessee in any sum whatever on account of income tax for the year 1935; that a legal and valid assessment of said tax was ever made; that the State had any right to assess the tax in the year 1939, and avers that any alleged assessment made in the year 1939 against the estate for income tax for the year 1935 is null and void."

It will be noted that in the answer "the Statutes of Limitations" are specifically pleaded. This is material, because in briefs filed the Executor now takes the position the Statute in question is not a Statute of Limitations.

The facts were stipulated in the Chancery Court, and the case was tried on that stipulation, no other proof being introduced.

The Chancellor rendered a written opinion deciding the cause in favor of the Executor, construing the Statute of Limitations in question as precluding an assessment for the year 1935. This opinion is in the record. A decree was entered dismissing the petition. Appeal was prayed, granted and perfected by the State. In this Court the State assigns as error the action of the Chancellor in decreeing that the claim of the State was barred by the Statute of Limitations, and in dismissing its intervening petition seeking to have its claim allowed as a preferred indebtedness against the estate.

The Hall Income Tax Law, Code Section 1123.1 et seq., contains the following pertinent provisions:

1. Beginning with the calendar year 1931, and for

each calendar year thereafter, an income tax of five per cent per annum would be levied and collected on income consisting of dividends, interest on certain bonds, notes, etc.

2. By Code Section 1123.6 the calendar year 1931 was declared to be the first period for which income tax returns should be filed with the Commissioner of Finance & Taxation, such returns to be filed not later than March 15, 1932, and that similar returns should be filed for each calendar year thereafter, on or before March 15th of the next year.

3. Code Section 1123.7 provides, "The tax or taxes due and payable on account of income received during any calendar year shall be paid in full on or before May 15th of the succeeding calendar year."

4. Code Section 1123.8 authorizes the Commissioner of Finance & Taxation, or the officials employed under him, when he has reason to suspect any person liable for the tax has failed to file a return, or has filed an incorrect return, to issue a citation to such person requiring the filing of a return or a true and correct return, and thereafter to assess such person for such lawful taxes as may be found due the State.

The section of Williams' Code from which the limitation pled herein is taken is 1123.22, as follows: "Such citation may be issued for the purpose of making or revising, correcting, and/or increasing assessments and/or returns or reports of persons for the year in which such citation may be issued and/or three years preceding such year, but no further or otherwise." Section 8, par. 17, Chapter 20, Acts Second Extra Session, 1931.

The Executor insists that when this section is properly construed it means that the Commissioner could make an assessment in and for the year 1939, and for only the

three years prior thereto, to-wit: 1938, 1937 and 1936, and the attempted assessment for 1935 could not be lawfully made, as it would be violative of this section.

The decision of this case turns upon the meaning of the words, "Such citation may be issued for the purpose of making or revising assessments or returns *for the year in which such citation may be issued.*"

It will be noted that the above italicized clause modifies or refers to "assessments or returns". The State insists that the return or assessment "for the year in which such citation may issue" can only apply to the most recent return required or the most recent assessment made to make or to revise which a citation can lawfully be issued; to illustrate, the return filed or required to be filed in 1939 or the assessment authorized to be made in that year will be for the tax year 1938, and in computing the four years for which assessments or corrected assessments may be made would be for 1938, 1937, 1936 and 1935.

Properly construed, the Hall Income Tax Law requires no taxpayer to file a return in the calendar year in which the tax accrues. It is impossible for such a return to be filed, because the taxpayer cannot know until midnight December 31st what his income from dividends on stocks and interest on bonds, notes, etc., will be. Therefore, the Act provides that the return must be made between January 1st and March 15th of the year subsequent to the tax year. No other construction can be put upon this Act.

The general law of the State for the back assessment of tangible property for *ad valorem* taxes provides that the County Trustee is authorized to assess and back assess omitted property as "picked-up" taxes. However, this authority is given subject to this limitation,

"but no assessment authorized by this section or by sections 1496-1507 shall be made for any other years than for the years in which said assessments shall be made and for three years preceding the same." Code, Section 1492.

Our general assessment laws provide that property shall be assessed as of January 10th of each calendar year, and that the *ad valorem* taxes for that year shall become due on October 1st thereof, when the tax books are certified to the County Trustee. Therefore, under this law, if a house and lot in 1939 were omitted from the assessment rolls by the County Tax Assessor, the County Trustee could, on October 1st of that year, or at any time thereafter, and prior to December 31st, assess such property for 1939 taxes, and back assess it for the years 1938, 1937 and 1936. It is evident that the General Assembly was attempting by the somewhat confusing language used in the section of the Hall Income Tax Law under consideration to authorize the Commissioner of Finance & Taxation to make assessments for four calendar years, and that these four years were the years preceding the 15th of March of the year in which a taxpayer might be in default in making his return for the preceding year.

There can be no valid reason why the General Assembly would fix a statute of limitations of four years for the re-assessment or back assessment of tangible property for *ad valorem* tax purposes, and in the assessment of income taxes provide for a limitation of only three years. It is evident that it was the intention of the General Assembly to provide for assessments on reports of returns for the year *for which* such citation might be issued and for three years preceding such calendar tax year. Such a construction would harmonize

with the statute applicable to back assessing tangible property.

■ It is a well settled principle of law that Statutes of Limitations against the State as the sovereign, are looked upon with disfavor, and will not be enforced unless there is a clear and explicit authority therefor given by statute.

Section 8579 of the Code provides, "The provisions of this chapter do not apply to actions brought by the State of Tennessee, unless otherwise expressly provided". The chapter referred to is the chapter of our Code on limitations of actions.

■ A Statute of Limitations affects not the right of the sovereign to levy taxes, but affects the remedy—that is the power of the sovereign to collect.

The general statute of limitations carried into the Code as Section 1494 et seq., was under consideration by this Court in *Shelby County* v. *Bickford,* 102 Tenn., 395, 52 S. W., 772, 774, in which it was held ordinary statutes of limitations do not apply to the State or its counties in proceedings to collect taxes. This language was used in that opinion: "The next question is [as] to the status of the plaintiffs with respect to this suit. If this is an action by the state in its sovereign capacity, or by the county as one of the agents of the sovereign, and for the recovery of taxes, then the ordinary statutes of limitation will not apply, under the maxim, *'Nullum tempus occurrit regi,'* [no time bars the King] unless the Acts of 1885, c. 24, and Id. c. 86, apply."

The Acts referred to were the general six year limitation provisions applicable to the collection of all taxes.

This Court said in *United States F. & G. Company* v. *Rainey,* 120 Tenn., 357, 113 S. W., 397, 409, "We are of opinion that the prerogative right of the sovereign to

receive payment of fines, forfeitures, taxes, and revenue, and such demands as were due it in its sovereign capacity was a part of the common law transmitted to this state from North Carolina, and that the decree of the chancellor was correct in adjudging priority to the state in the collection of its delinquent revenue on this bond.''

In *Knoxville* v. *Gervin*, 169 Tenn., 532, 89 S. W. (2d), 348, 351, this sovereign right was re-affirmed by this Court, this language being used, ''*Elliott* v. *Williamson*, 79 Tenn. (11 Lea), 38, held that the general statute of limitations is no defense to the enforcement of its taxes by a municipality. Obviously, in levying and collecting taxes, a municipality is asserting a prerogative of sovereignty. Its taxes are no more barred by a general statute of limitations than the state's taxes.''

█ It is well established that any statute restricting or limiting the State's right to assess or collect its taxes is in derogation of sovereignty. It is a well settled rule that statutes in derogation of sovereignty must be strictly construed in favor of the State. *State ex rel. Allen* v. *Cook*, 171 Tenn., 605, 106 S. W. (2d), 858.

In this opinion the rule stated in 49 Corpus Juris, 1121, was approved. The section of Corpus Juris referred to is: ''Statutes in derogation of sovereignty should be strictly construed in favor of the State, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the State or its government of any of its prerogatives, rights or remedies, unless the intention of the Legislature to effect this object is clearly expressed.''

█ The rule thus stated is not in conflict with that other rule of construction that statutes imposing taxes will not be extended by implication, and will be strictly construed in favor of the taxpayer. There is no contro-

versy over the right of the State to make this assessment. It is admitted that Mr. Mauney defaulted in making in 1936 return of his income for 1935. If he had promptly made such return, the State would have collected its taxes. The defense interposed is that by lapse of time due to the default of the taxpayer in violation of law, the State has lost its right to collect.

"Statutes of limitation barring the collection of taxes must receive a strict construction in favor of the government. Limitation will not be presumed, in the absence of clear congressional action." *Loewer Realty Company* v. *Anderson* (2 Cir.), 31 F. (2d), 268, 269. *Certiorari* denied, 280 U. S., 558, 50 S. Ct., 17, 74 L. Ed., 613. See also *Imhoff-Berg Silk Dyeing Company* v. *United States* (D. C.), 43 F. (2d), 836.

In the case presently to be cited, the taxpayer, who was suing to recover taxes paid under protest, contended the Government's right to assess and collect was barred. In overruling this defense and holding the limitation provision involved was no bar, the Circuit Court of Appeals for the Ninth Circuit used this language:

"Appellants invoke the principle announced by the Supreme Court in *Gould* v. *Gould*, 245 U. S., 151, 38 S. Ct., 53, 62 L. Ed., 211, regarding the construction of the income tax act of 1913. In that case the court said:

" 'In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.'

. . . . . .

"In the instant case, however, we must not overlook another principle, equally well established by the same court, namely: 'Statutes of limitation sought to be applied to bar rights of the government (unlike statutes levying taxes), must receive a strict construction in favor of the government. *United States* v. *Whited & Wheless, Ltd.* (246 U. S., 552, 38 S. Ct., 367, 62 L. Ed., [875], 879), *supra.' Dupont De Nemours & Co.* v. *D'avis*, 264 U. S., 456, 462, 44 S. Ct., 364, 366, 68 L. Ed., 788.

"In the case of *United States* v. *Whited & Wheeless*, 246 U. S., 552, 561, 38 S. Ct., 367, 368, 62 L. Ed., 879, the court, interpreting a limitation statute, said: 'Fundamental to the interpretation of the statute which the answering of this question renders necessary, lies the rule of law settled "as a great principle of public policy" that the "United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound." . . .' " *Parrott* v. *McLaughlin* (9 Cir.), 67 F. (2d), 397, 398.

To adopt the construction contended for by the Executor would produce an absurd result, when considered in connection with the three year statute applicable to back assessment of tangible property. Statutes will be so construed as to avoid absurd consequences. *Wise & Co.* v. *Morgan,* 101 Tenn., 273, 48 S. W., 971, 44 L. R. A., 548; *Riggins* v. *Tyler*, 134 Tenn., 577, 184 S. W., 860; *Tennessee Electric Power Company* v. *Chattanooga*, 172 Tenn., 505, 114 S. W. (2d), 441.

The law placed the burden on Mr. Mauney of supplying by a legal return the information on which an assessment for the year 1935 could be made. In violation of law, he defaulted in filing this return. His Executor now seeks by a strained and unnatural construction of

the statute to escape liability. This cannot result, because this statute must be strictly construed in favor of the State. The Executor must put his finger on a clear provision of the statute barring the right of the State to make back assessments for four calendar years which are by the statute made tax years.

This rule of construction has been thus succinctly stated by eminent text writers on Federal Income Taxation: "Statutes of limitation barring the assessment and collection of taxes justly due and unpaid receive a strict construction in favor of the government, and limitations in such cases will not be presumed in the absence of clear legislation. This principle has been scrupulously adhered to in the large majority of cases. In perhaps no other single phase of the Income Tax Acts does a tendency to favor the taxpayer involve inherently such dangerous potential consequences to the public treasury. . . ." Paul & Mertens Law of Federal Income Taxation, Vol. 5, page 499.

This text is supported by *United States* v. *Whited & Wheless*, 246 U. S., 552, 561, 38 S. Ct., 367, 368, 62 L. Ed., 875, 881, where this language is used, "The statute of limitations did not create the right of action in the government or either of the remedies for enforcing that right. It relates to the remedy, and in terms applies only to one remedy, that of annulling the patent [a land grant.] The right of the government, asserted in this case, really springs from the fraudulent obtaining of the patent, not from the patent itself, and this right continues until it is satisfied or cut off by statute. . . .

"Also the fact that this principle has been accepted by this court as requiring not a liberal, but a restricted, a strict, construction of such statutes when it has been urged to apply them to bar the rights of the govern-

ment." *United States* v. *Nashville, C. & St. L. R. Co.*, 118 U. S., 120, 125, 6 S. Ct., 1006, 30 L. Ed., 81, 83; *Northern Pacific R. Co.* v. *United States*, 227 U. S., 355, 367, 33 S. Ct., 368, 57 L. Ed., 544; *La Roque* v. *United States*, 239 U. S., 62, 68, 36 S. Ct., 22, 60 L. Ed., 147, 151.

"Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *Dupont, etc., Company* v. *Davis*, 264 U. S., 456, 462, 44 S. Ct., 364, 366, 68 L. Ed., 788, 791.

██ We think the rules of construction declared in the authorities cited are sound and are controlling in this case. We therefore hold when properly construed, that section of the Hall Income Tax Law (Code 1123.22) providing a limitation on the assessment of taxes means that taxes may be assessed and back assessed for four years—that is, for the calendar year immediately preceding the year in which the assessment is made, and for three years next preceding that tax year.

The decree of the Chancellor is reversed and the cause remanded for the collection of this tax as a preferred claim against the estate of Mr. Mauney.