Governor.

*By the Governor:*

Secretary of State.

---

**Anthony E. BOUCHARD, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

May 16, 1977.

Certiorari Denied by Supreme Court
Aug. 22, 1977.

William C. Wilson, Nashville, for appellant.

Brooks McLemore, Jr., Atty. Gen., Michael E. Terry, Asst. Atty. Gen., John E. Rodgers, Roger T. May, Asst. Dist. Attys., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Anthony E. Bouchard, was tried and convicted by the Criminal Court of Davidson County of the felony of selling heroin. His punishment was fixed by the jury as incarceration in the State Penitentiary for not more than fifteen years nor less than ten years; a fine was imposed in the sum of $18,000.00. On appeal, he makes nine assignments of error; all of which are without merit.

The defendant's first assignment of error is: "The Trial Court erred by holding the jury panel beyond its term where no jury had been selected."

The procedure for selecting juries in Davidson County is governed by Chapter 53, Private Acts of 1947, as amended,[1] which provides in part:

"SEC. 8. *Be it further enacted,* That at the first day of the Term of Court, of the Circuit or Criminal Courts, the Judge or Judges, after securing the Jury list, shall select from such list the petit or trial juries for the Term; the Clerk of the Court shall have prepared a Jury Calendar dividing the Term of Court into three week periods. The first eighteen jurors selected shall be the petit or trial jury for the first three weeks period of the Term; the second eighteen jurors selected shall be the petit or trial jury for the second three weeks period of the Term, and so on until the Jury Calendar for the Term is filled. . . ."

"SEC. 14. *Be it further enacted,* That it shall be a misdemeanor for any person, in any County subject to the provisions of this Act, to serve upon any jury in the Circuit or Criminal Courts of said County for more than three weeks in any three years dating from the time the name of such person is drawn from said Jury Box No. 1, unless at the end of his three weeks service he shall be engaged in the hearing of a cause as a juror, which cause shall not then be concluded, in which event such person shall sit until the end of said cause without offending against this Act. . . ."

After several continuances, the case was set for trial on Monday, 22 March 1976. On that day, defendant's counsel moved for a continuance or resetting of the case due to illness of the defendant. Defense counsel informed the Court that the defendant could be examined by a physician on the following Wednesday, March 24, but not prior to then. As requested by defendant, the Trial Judge reset the case for Thursday, March 25, to enable the defendant to be examined and to allow the examining physician to be in court. On Thursday, March 25, the defendant's doctor testified that the defendant had not completely recovered, but that he was able to go to trial.

On this same day, Thursday, March 25, the Court reset the case for the following Monday, March 29. The Trial Judge did this in order to avoid keeping the jury sequestered or "locked up" over the weekend, as it was apparent that the trial would require four days or more.[2] The Trial Judge also observed that this would get the defendant "further away from the flu."

The jury panel which was serving on Thursday, March 25, was then in its third week. The Court excused the panel and instructed the members of the panel to re-

---

1. The defendant has also cited Chapter 226 of the Private Acts of 1967 which purports to reduce the term of jury panels in Davidson County to two weeks, but the 1967 Act was not locally approved and never became law.

2. The trial actually lasted six days.

turn on Monday, March 29, which was the beginning of the panel's fourth week of service.

■ We are first presented with the question of whether the action of the Trial Judge in using this jury to try this case during the jury's fourth week of service invalidated the verdict. We think not. The defendant did not comply with the technical requirement that a written Motion to Quash be filed. The defendant did no more than make oral objection and exception on Thursday, March 25, when the Trial Judge excused the panel and directed its members to return the following Monday. The law requires that a written Motion to Quash be filed when an entire jury panel is sought to be dismissed on purely technical grounds. *Kirkendoll v. State,* 198 Tenn. 497, 281 S.W.2d 243 (1955); *Monday v. Millsaps,* 37 Tenn.App. 371, 264 S.W.2d 6 (1953).

In addition, we think that there was substantial compliance with the Private Acts of 1947, as amended. This case concluded the jury docket for that term of court and no panel had been summoned for the following Monday, March 29. Instead of commencing the selection of the jury on Thursday, March 25, and locking up the jury for the weekend at their inconvenience and at substantial public expense, the Trial Judge prudently commenced the trial on the following Monday. If the Trial Judge had commenced the trial on Thursday, he would have been in violation of the general law set out in T.C.A. § 40–2502, directing trial courts to establish rules of practice in the trial of criminal cases which may tend to diminish the cost of such cases.

The defendant asserts in his brief that he was prejudiced by the use of this jury panel because: (1) "[T]hat the longer a jury panel sits hearing cases, the more likely they are to convict," and (2) that the purpose of the Statute is to "discourage the presence of professional jurors." None of the members of the panel served between Thursday, March 25 and Monday, March 29, and the members of the panel were no more "experienced" or "professional" on March 29 than they were on March 25. We do not think there was a legislative intent to force trial courts of Davidson County to commence the trial of a case during the latter part of a week, knowing that it would be necessary to sequester the jury over the weekend. Such practice would serve no purpose, would benefit no one, and would be very expensive. We will not apply such an absurd construction to this Private Act. *First National Bank v. Howard,* 148 Tenn. 188, 253 S.W. 961 (1923). Also see *Anderson v. Security Mills,* 175 Tenn. 197, 133 S.W.2d 478 (1939); *West v. State,* 140 Tenn. 358, 204 S.W. 994 (1918).

■ The defendant assigns as error that the evidence preponderates against the verdict of guilty and in favor of his innocence. The accredited evidence was that on 6 November 1975, Mrs. Helen Jo Risler entered Jim's Pool Room in Davidson County and purchased a quantity of heroin from the defendant for the sum of $150.00. There was evidence that the defendant was in the business of selling drugs and that he had made a previous sale to Mrs. Risler and that he sold drugs to other persons. Mrs. Risler made the purchase on 6 November 1975, in cooperation with the Metropolitan Police Department. Mrs. Risler's automobile and her person were searched prior to the transaction. It was determined that she did not have drugs in her possession before entering the poolroom, but that she did have drugs in her possession when she left the poolroom.

The defendant's proof was that he was not in the drug business and did not sell the drug to Mrs. Risler. The defendant has not shown that the evidence preponderates against the verdict of guilty and in favor of his innocence. We must overrule this assignment. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963).

The defendant's second assignment of error alleges that the Trial Court improperly restrained defense counsel's closing argument to the jury.

Helen Jo Risler testified that she made several unsuccessful attempts to buy heroin

from the defendant since she began cooperating with the police department. These unsuccessful attempts were all made prior to the successful attempt on 6 November 1975. She testified further that tapes were made of conversations with the defendant on the unsuccessful contacts with him.

■ On the defendant's motion, the tape recording of the November 6 conversation was suppressed by the Court, because the recorded conversation was indiscernible. In his argument to the jury, defense counsel attempted to argue that since the State did not introduce the five or six tape recordings made on unsuccessful efforts of Mrs. Risler to purchase drugs from the defendant, that this was an inference that the tapes contained exculpatory evidence. The Court sustained an objection to this line of argument.

We think the Trial Court was correct. The defendant was being tried for the successful purchase allegedly made by Mrs. Risler on November 6. The unsuccessful efforts were made prior to that time. What was said on the prior occasions when the defendant admittedly did not sell heroin to the informant could not be exculpatory of the subsequent alleged sale of November 6. For the same reason, this argument could not have affected the results of the trial.

Moreover, we glean from the record that these tapes were indiscernible but were available to be heard by defense counsel prior to trial. Had they contained exculpatory evidence, they would have been available to the defendant for use in evidence. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This assignment is overruled.

In Assignment of Error III, the defendant states that he was denied a fair trial because the State failed to fully respond to his discovery motion. He complains that his attorney did not see certain photographs prior to trial, that tapes made during Mrs. Risler's unsuccessful efforts to buy heroin from the defendant prior to 6 November 1975 "might" have been exculpatory and that the State did not supply "names, addresses and statements of others who had attempted to entrap the appellant into selling drugs on occasions when he refused to do so."

When the discovery motion was filed, the State did not intend to use the photographs as evidence. Defense counsel stipulated with the State that the photographs in question could be used, and waived his objection to the use of the photographs.

■ The tapes recorded prior to the successful buy from the defendant are not shown to contain exculpatory evidence. To the contrary, the record reflects that they do not contain exculpatory evidence. The witness testified that the defendant did not sell her drugs on the occasions when these tapes were recorded. She did testify that she bought drugs from the defendant on one prior occasion, but that she was not acting in concert with the police department at that time and no tapes were made. Moreover, the record reflects that on March 24, defense counsel was aware of the existence of multiple "tapes" and stipulated regarding them.

There is no showing that the State had the names and addresses of witnesses who could furnish exculpatory evidence of any kind. The record indicates that the State had no knowledge of any witnesses who could furnish exculpatory information.

Assignment III is overruled.

In his fourth assignment of error, the defendant says that the Court erred in overruling two motions for mistrials.

■ The first alleged ground for a mistrial arose from testimony of Diane Johnson to the effect that defendant's counsel participated in a discussion laying plans to bribe Mrs. Risler. The witness was the daughter of Mrs. Risler. On direct examination, Ms. Johnson testified that she had been a heroin addict in the past, and that she had purchased her drugs from the defendant. On cross-examination, defense counsel questioned the witness concerning a

trip she made to his office. These questions were designed to show that the witness, at the time of the office visit, intended to testify that the defendant did not sell drugs. On redirect examination, the State brought out the testimony of the witness to the effect that defense counsel joined in discussing the possible bribery of Mrs. Risler. The State did not mention the trip to defense counsel's office on direct examination. However, in view of the questions asked the witness on cross-examination, it was legitimate for the State to bring out the witness's version of her purpose in visiting defense counsel's office and what had transpired. We regret this unfortunate incident, but we must hold that there was no abuse of the Trial Court's discretion in denying a mistrial. *See, Layman v. State,* 1 Tenn.Cr.App. 83, 429 S.W.2d 832 (1968).

■ The second ground for a mistrial is based on an allegation that the State was spying on defense witnesses. There is an indication in the record that certain defense witnesses were "on call" (not confined to the jury room at defendant's request). They were alleged to have been in and out of the courtroom when "the rule" had been invoked. The State attempted to obtain evidence of this by electronically wiring an individual who talked with these witnesses.

The jury was not aware of any of this activity. It could not have prejudiced the defendant or affected the trial in any way. Furthermore, the defendant did not move for a mistrial. The Trial Judge did not abuse his discretion in not declaring a mistrial *sua sponte. Layman v. State, supra;* T.C.A. § 27–117. This assignment is overruled.

■ The defendant assigns as error the refusal of the Trial Judge to permit him to examine prospective jurors individually and outside of the presence of "each other." The Trial Judge has wide discretion in the examination of prospective jurors and his action will not be disturbed unless there is an abuse of that discretion. *Vines v. State,* 190 Tenn. 644, 231 S.W.2d 332 (1950); *Kennedy v. State,* 186 Tenn. 310, 210 S.W.2d 132 (1947), *cert. denied,* 333 U.S. 846, 68 S.Ct.

659, 92 L.Ed. 1129 (1948); *Solomon v. State,* 489 S.W.2d 547 (Tenn.Cr.App.1972). We find nothing in the record indicating an abuse of discretion on the part of the Trial Judge. The method of voir dire utilized by the Trial Judge is the prevailing practice in Tennessee. *State v. Jefferson,* 529 S.W.2d 674 (Tenn.1975); *Lang v. State,* 3 Tenn.Cr.App. 108, 457 S.W.2d 882 (1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971). This assignment is overruled.

■ The defendant states that the Court erred in refusing a continuance. The only ground assigned for the request for the continuance was that the defendant was ill. On Thursday, 25 March 1976, his attending physician testified that the defendant's recovery was sufficient to enable him to go to trial on that day. There was no evidence to the contrary, but the Trial Judge set the case for trial the following Monday for the purpose, among others, of allowing the defendant to make further recovery. Motions for continuances are addressed to the sound discretion of the Trial Judge. *Bivens v. State,* 4 Tenn.Cr.App. 580, 474 S.W.2d 431 (1971). We do not find that the Trial Judge abused his discretion. This assignment is overruled.

■ The seventh assignment is that the Trial Court erred "by improperly restricting impeachment of the State's witnesses." The defendant argues that he was not permitted to show by cross-examination of State's witnesses, that the witnesses had been treated by the State with favor and leniency in cases against them. The Court had previously ruled that State's witnesses could be discredited only by evidence of convictions of certain classifications of crimes. The defendant is entitled to cross-examine the State's witnesses to show that promises of favor or leniency have motivated such witnesses to testify falsely against the defendant. This is another method of discrediting the testimony of a witness. *See,* D. Paine, Tennessee Law of Evidence §§ 209, 211 (1974). However, the record reflects that the defendant was permitted to fully cross-examine the State's witnesses

in this regard. Since the record does not support defendant's contention that he was restricted in cross-examination of the State's witnesses, we must overrule this assignment.

The defendant's remaining assignment of error is that the judgment should be reversed "because of the cumulative effect of the errors at trial which, taken together, show that the appellant was deprived of a fair trial." We have examined this record and do not agree that the defendant was deprived of a fair trial. This assignment is overruled.

The judgment of the Criminal Court is affirmed.

WALKER, P. J., and DWYER, J., concur.