IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2004 Session

## CITY OF ELIZABETHTON, TENNESSEE v. NORTH AMERICAN FIBERS, INC., et al.

### Appeal from the Chancery Court for Carter County
No. 24908     G. Richard Johnson, Chancellor

---

### No. E2003-02930-COA-R3-CV - FILED NOVEMBER 19, 2004

---

This appeal arises out of a cause of action filed by a municipality against a corporate landowner for breach of a sewer easement which the municipality purchased as a path for its underground sewer line. The municipality alleged that after construction of the sewer line, the landowner's long-standing practice of depositing fly ash and cinders over the area of the easement rendered the line inaccessible and necessitated the construction of an alternate sewage system for which the municipality requested compensation. The municipality also sought to hold the landowner's president and chief executive officer liable as the alter ego of the landowner. The trial court decreed that the landowner had unreasonably burdened the easement, awarded the municipality compensatory damages, and decreed that although the landowner's president was an alter ego of the landowner, he was not personally liable. On appeal the landowner argues that the municipality's cause of action was barred under the statute of limitations and equitable doctrines of estoppel and laches, that under the rule of practical construction the easement allowed the landowner to dump material over the sewer line, that the trial court erred in its award of damages, and that the court erred in refusing to strike findings with respect to the landowner's president. We affirm the judgment of the trial court as rendered and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Stephen G. Anderson, Knoxville, Tennessee, for the Appellant, North American Fibers, Inc.

Charlton R. Devault, Jr., Knoxville, Tennessee, for the Appellee, City of Elizabethton, Tennessee.

**OPINION**

I.

Appellee, the City of Elizabethton (hereinafter "the City"), purchased in 1957 an easement from Beaunit Mills and North American Rayon Corporation, Inc., predecessors in title to Appellant, North American Fibers, Inc. (hereinafter "NAFI"). The easement ran approximately 1,700 feet across an open field and provided the City with a path for placement of one of two 24 inch diameter gravity sewer interceptor lines. The line which is the subject of this case, designated "the west interceptor line", served as a conduit for seventy percent of the City's total sewage. It began at a collection point in the City and extended through NAFI's property to the bank of the Watauga River at which point sewage was siphoned under the river to the sewage treatment plant located on the other side.

At times relevant to the instant matter, NAFI operated a coal-fired power plant in the vicinity of the sewer easement. For a number of years NAFI and its predecessors had dumped cinders and fly ash produced by the power plant in settling ponds and waste piles in the area through which the easement ran. This practice continued after construction of the subject sewer line such that the surface elevation over the line progressively and substantially increased and manholes to the line were buried.

In the mid-1980's, the Tennessee Department of Conservation and Environment (hereinafter "DCE") categorized the dumping area as a "private landfill" and ordered that the dumping cease. In 1988, DCE, which had not been advised of the City's sewer line easement, mandated that NAFI place a clay "cap", or cover layer, over the dumping area. As a consequence of the accumulated ash, cinders and other debris and the clay cap, manhole covers, which had been at ground level when the line was constructed in 1958, were now buried twelve to twenty feet underground and the sewer line, which had been approximately fifteen feet underground in 1958, was now more than thirty feet underground.

In 1995, the City's wastewater plant manager found that the sewer line and manholes located within the easement area were buried under the above described debris and clay cap and were inaccessible. The City asked NAFI if it could borrow a bulldozer to remove the accumulation over its sewer line and was advised that it would need DCE's permission before proceeding. The City subsequently determined that the process of getting DCE's approval and accessing the line by bulldozing was both impractical and cost prohibitive. Thereafter, the City entered into discussions with NAFI in an effort to resolve the problem, but a mutually acceptable solution was not realized and, on August 16, 2000, the City filed a complaint against North American Fibers, Inc., North American Corporation; and Charles K. Green, individually and as 'alter ego' of North American Fibers, Inc. The complaint demands that NAFI "remove the existing burden on the plaintiff's sanitary sewer line easement" and "restore complete and regular access" to the line. After the complaint was filed, negotiations between the parties continued without resolution and, in July of 2001, the City completed construction of a bypass system consisting of two parallel pressurized sewer lines and a

pump station. This system eliminated the City's dependence upon both the inaccessible west interceptor line and the east interceptor line and both of those lines were abandoned.

On February 14, 2002, the City filed an amended complaint which notes the futility of negotiations between itself and NAFI and, *inter alia*, recites as follows:

> Since the filing of its original complaint, the plaintiff constructed and placed in service in July 2001, a forced-main sewer line which bypasses that portion of its sanitary sewer line system which has been illegally burdened and obstructed by defendant. Plaintiff avers that the construction of the sewer line bypass and accompanying pump-stations were necessary to preserve the integrity of the municipal sanitary sewer system and to protect the health and safety of the inhabitants of the City and of the community in general. Plaintiff avers the costs incurred in the construction of the forced-main bypass were $1,102,754.00 and were reasonable.

The complaint demands that the City be awarded the $1,102,754.00 incurred in construction of the bypass system and an amount adequate to reimburse it "for the increased debt service which it has incurred in order to finance the construction of its sewer line bypass."

Trial of the City's complaint was held in December of 2002 after which the trial court entered its memorandum opinion and final order decreeing that NAFI "unreasonably and substantially burdened" the City's sewer line easement and awarding the City damages in the amount of $3,414,985.00, consisting of $1,102,754.00, attributable to the construction of the bypass system, plus $2,312,231.00 in interest. In response to post judgment motions filed by NAFI, the trial court reduced its judgment to $3,215,270.00 and further reduced that amount to its present value of $1,187,581.49. Thereafter, NAFI timely filed the instant appeal.

## II.

The following issues are presented for our review in this case:

1) Was the City's cause of action against NAFI barred under either the statute of limitations or the equitable doctrines of laches and estoppel?

2) Did the trial court err in its award of damages?

3) Did the trial court err in failing to find that NAFI was authorized to dump waste material on the land over the City's sewer line based upon the parties' practical construction of the easement?

4) Did the trial court err in refusing to strike from the record its findings with respect to Charles K. Green?

-3-

III.

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) and T.R.A.P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). "On an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990), citing *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974).

IV.

The first issue we address is whether the City's cause of action in this case was barred under either the statute of limitations or the equitable doctrines of laches and estoppel.

Tenn. Code Ann. § 28-2-103(a) provides as follows:

(a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

Ordinarily, a suit to abate an adverse use of an easement under this section must be brought within seven years from the time the cause of action arose. *Shearer v. Vandergriff*, 661, 682 S.W.2d 680 (Tenn. 1983). And, as acknowledged by this Court in *Moffitt v. Meeks,* 199 S.W.2d 463, 465 (Tenn. Ct. App. 1946), this statute of limitations begins to run from the time the adverse action commences. However, Tenn. Code Ann. §28-1-113 provides that the provisions of Title 28 are not applicable to actions brought by the state "unless otherwise expressly provided for." The City's action is not asserted to be an action "otherwise expressly provided for."

In *Hamilton County Board of Education v. Asbestospray Corporation*, 909 S.W.2d 783, 785 (Tenn. 1995) the Tennessee Supreme Court discussed the origin and applicability of Tenn. Code Ann. § 28-1-113 as follows:

The common law doctrine of *nullum tempus occurit regi*, which is literally translated as "time does not run against the king," prevents an action brought by the State from being dismissed due to the expiration of the statutory period of limitations normally applicable to the specific type of action. This doctrine has been justified on the ground "that the public should not suffer because of the negligence of its officers and agents ..." *State ex rel. Board of University & School Lands v. Andrus*, 671 F.2d 271, 274 (8th Cir. 1982). Tennessee's version

-4-

of this doctrine, found at § 28-1-113, provides as follows: "The provision of this title [pertaining to statutes of limitation] do not apply to actions brought by the State of Tennessee, unless otherwise expressly provided." This doctrine is not to be lightly regarded, as we have repeatedly stated that statutes of limitation are looked upon with disfavor in actions brought by the State, and will not be enforced in the absence of clear and explicit statutory authority to do so. *Dunn v. W.F. Jameson & Sons, Inc.*, 569 S.W.2d 799, 802 (Tenn. 1978); *Anderson v. Security Mills*, 175 Tenn. 197, 133 S.W.2d 478 (1939).

Moreover, it is settled that the *nullum tempus* doctrine applies, in certain cases, to subordinate organs of the state, such as counties or municipalities. The basic rule regarding the application of *nullum tempus* to actions brought by subordinate bodies is set forth in *Wood v. Cannon County*, 25 Tenn. App. 600, 166 S.W.2d 399 (1942), where we stated:

> The statute of limitations does not run against the sovereign or the state, or against a county, when [the county is seeking] to enforce a demand arising out of, or dependent upon, the exercise of its governmental functions as an arm of the state. But the statute does run against a county or municipality in respect of its rights or claims which are of a private or corporate nature and in which only its local citizens are interested, as distinguished from a public or governmental matter in which all the people of the state are interested.

*Wood*, 166 S.W.2d at 401 [citations omitted]. *See also Jennings v. Davidson County*, 208 Tenn. 134, 344 S.W.2d 359, 361-362 (1961).

Pursuant to the standard indicated by the Court in *Hamilton County*, we are required to determine whether the City's breach of easement case against NAFI is "of a private or corporate nature and is a matter in which only its local citizens are interested, as distinguished from a public or governmental matter in which all the people of the State are interested."

NAFI apparently argues that the breach of easement suit filed by the City was of a private nature because, in filing the suit, the City "was seeking to reduce costs of sewer improvements undertaken by the City for the benefit of local citizens and ratepayers." We disagree with this conclusion.

It is true that the damages which were awarded in this case do benefit the local citizenry in that the costs of the new sewer system will now be paid for by NAFI and not from municipal revenue. However, the problem which resulted in the award of damages - the problem which prompted the prosecution of this case - was the fact that a significant portion of the City's sewage system was rendered inaccessible as a result of the overburden placed upon it by NAFI. The

potential consequences of this situation were attested to by the City's wastewater manager, Johann Coettzee, as follows:

> Q. What would you, as the wastewater manager, have had to do in the event that there had been any type of blockage or collapse in the line under the landfill?
>
> A. I would be in a very bad position. Because of the length of the pipe that is covered, one would have no idea where to dig; and digging in itself would be a lengthy and time-consuming operation. So, the risk that we have there was that you could have an environmental catastrophe with millions of gallons of wastewater going into the Watauga River and spilling into the fields upstream of the landfill during the time it would take to locate where exactly is the problem in the landfill, which is a monumental undertaking considering the length of the area that this covered and the depth that the pipe was at.

The Water Quality Control Act, codified at Tenn. Code Ann. Title 69, provides at § 69-3-102(a):

> Recognizing that the waters of Tennessee are the property of the state and are held in public trust for the use of the people of the state, it is declared to be the public policy of Tennessee that the people of Tennessee as beneficiaries of this trust, have a right to unpolluted waters. In the exercise of its public trust over the waters of the state, the government of Tennessee has an obligation to take all prudent steps to secure, protect, and preserve this right.

If for no other reason, resolution of the problem which caused the City to file its complaint in this case benefits not only the citizens of Elizabethton, but the general population of this state by securing, protecting and preserving the "right to unpolluted waters." The City was engaged in the exercise of a governmental function as an arm of the state in this case and, accordingly, the City is not subject to the indicated statute of limitations.

NAFI also argues that the City is equitably estopped from pursuing its cause of action under the doctrine of laches, arguing that the City unreasonably delayed in asserting its rights. In its brief, NAFI alleges that the City was aware that NAFI was dumping material over its sewer line for more than thirty years and yet "the City watched and said nothing"and, thereby, acquiesced in the dumping.

Laches is a defense peculiar to courts of equity and is usually applied in the absence of a statute of limitations. *Clark v. American National Bank and Trust Company of Chattanooga*, 531 S.W.2d 563, 572 (Tenn. Ct. App. 1974). It is based upon the doctrine of estoppel which provides "that one may not enforce rights against another when that other has materially relied on some conduct of the moving party which is in conflict with his asserted rights." *Hannewald v. Fairfield Communities, Inc.*, 651 S.W.2d 222, 228 (Tenn. Ct. App. 1983). Laches provides that equity will

not intervene on behalf of a plaintiff who has unreasonably delayed in pursuing his rights, *Hannewald, id.* However, as the Tennessee Supreme Court stated in *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124,125 (Tenn. 1985), the doctrine of estoppel generally does not apply to the acts of public authorities:

> Public agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and *very exceptional circumstances* are required to invoke the doctrine against the State and its governmental subdivisions.
>
> ...
>
> It is significant to observe that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took *affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence.* In the instant case the defendants have nothing upon which to predicate *the essential element of inducement*, except silence and inaction. (Emphasis added)

In the matter before us, NAFI references no evidence in the record which shows that the City "took affirmative action that clearly induced" NAFI to place the overburden on the City's easement and, accordingly, the doctrine of equitable estoppel and laches do not apply.

The next issue we address is whether the trial court erred in its award of damages.

In its memorandum opinion, the trial court stated as follows with respect to the award of damages in this case:

> The burden that the Defendant has placed on the city's easement has reduced the value of the easement beneath the waste and cap to zero, as the city cannot reasonably access that portion of its sewer line. In light of all of the circumstances, the city chose a reasonable method of accessing its sewer line by having constructed a new pressurized by-pass sewer line contiguous to the cap covered line. The cost of construction of the new line was $1,102,754.00 principal, plus $2,312,231.00 interest, for a total cost of $3,414,985.00[1]. The investment and interest lost due to the cost of the project is not an appropriate element of damages, as the Plaintiff will be made whole by being reimbursed by the Defendant for the actual reasonable costs for accessing its sewer line, which costs were incurred as a result of the Defendant's acts in making the line unreasonably inaccessible.

---

[1]As we have noted the amount of damages awarded was subsequently reduced to a lesser amount.

The Defendant argues that the Plaintiff failed to mitigate its damages. When the record is considered as a whole, the Plaintiff has acted with reasonable care and diligence under the circumstances, and did not enhance its damages.

With regard to the issue of damages NAFI first contends that "the preponderance of the evidence was that the West Interceptor was not damaged and that access to it could have been permanently restored for about $140,000."

NAFI's argument that the west interceptor line was not damaged is inapposite. The trial court's award of damages is based upon its finding that the line was no longer subject to reasonable access, not that the line was damaged. NAFI's argument that access to the line could have been restored for $140,000.00 is based upon the report and testimony of E. Roberts Alley, an engineering expert who appeared as a witness in the case on behalf of NAFI. Apparently the fill over the City's easement covers four manholes which open into the covered sewer line. Mr. Alley proposed that the material above the manholes be excavated which would allow for the insertion of pre-manufactured ten foot diameter metal cylinders as access channels to each of these manholes. Assuming that this solution did allow access to the covered manholes, it would not provide access to the line as a whole. In its reply brief, NAFI concedes that a block in the west interceptor "could be such that it could not be fixed from a manhole and might require a dig-down repair." We have already referenced testimony of Mr. Coetzee to the effect that a dig down repair under the present circumstances would be a time consuming undertaking which could result in a major environmental catastrophe. This evidence supports the conclusion that Mr. Alley's proposed solution of accessing the manholes was inadequate and unacceptable. Other evidence in the record does not preponderate to the contrary.

NAFI next argues that the new sewage system cost the City $2,202,000.00 but that that money was spent in lieu of the $1,300,000.00 the City otherwise would have spent to replace a forty year old influent pump which was part of the replaced system. NAFI asserts that "the extra $900,000.00 gave the City a new modern system in place of an aging one built in the 1950's, eliminated the invert siphon under the Watauga River and brought the City other advantages." NAFI contends that the "damages from breach of the easement cannot be more than the net additional cost incurred by the City as a result of the breach."

While it is true that the new system resulted in incidental benefits to the City, this does not belie the fact that the new system constituted a reasonable solution to problem caused by NAFI. NAFI's alternative to the implemented solution was to gain entry to the four manholes and, as we have indicated, we do not agree that this would have solved the problem presented. The evidence does not preponderate against the finding that construction of the new system was the only proposal presented that constituted a reasonable solution to the overburden problem.

NAFI also contends that the City failed to mitigate its damages in this case.

A plaintiff has the duty to exercise reasonable care and diligence to avoid loss or minimize damages. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 234 (Tenn. Ct. App. 1976). But

only reasonable action is required of a plaintiff in this regard and a plaintiff is not required to mitigate damages if such action is unduly burdensome. *Id.* In *Tampa Electric Company v. Nashville Coal Company*, 214 F. Supp. 647, 652 (M.D. Tenn. 1963) the Court states as follows regarding limitations on the plaintiff's duty to mitigate :

> The critical factor in determining fulfillment of a plaintiff's duty to mitigate is whether the method which he employed to avoid consequential injury was reasonable under the circumstances existing at the time. The rule with respect to mitigation of damages may not be invoked by a contract breaker "as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter." In re Kellett Aircraft Corp., 186 F.2d 197, 198-199 (3rd Cir. 1950). As stated in McCormick, Damages, Sec. 35 (1935), "a wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him."

In support of its argument that the City failed to mitigate damages, NAFI states that "[i]t is virtually self-evident that the problem with fly ash over the sewer line could have been avoided if the city had ever objected to the practice." Contrary to this assertion that the City never objected, we note the following letter dated November 11, 1971, from then City Attorney, Walter Curtis, to Dan Laws, counsel for NAFI's predecessor, Beaunit Corporation:

> Dear Dan:
>
> On August 28, 1957, Beaunit Corporation, then doing business as Beaunit Mills, Inc., for and in consideration of the sum of $10,000.00, executed a Deed conveying an Easement to the City of Elizabethton, Tennessee, for the purpose of installing an Interceptor Sewer Line for the City of Elizabethton, Tennessee. This Document is of record in Deed Book 145 at Page 43, in the Register's office for Carter County, Tennessee, and a copy of same is attached hereto for your information.
>
> There is also enclosed herewith a map or survey showing the City Sanitary Sewer Line referred to above, in its relation to the wet basin settling ponds now being used by Beaunit.
>
> Examination of this map will show that several hundred feet of the Sewer Line, and Two (2) Manholes marked "A" and "B" on the map, are now completely covered up, and inaccessible, by reason of the wet basin settling ponds.

I am advised by the City Engineer that in the event of any leakage from the settling ponds into the Sewer Line, there would probably be damages incurred at our Sewer Treatment Plant in the neighborhood of a million dollars before the Plant could be shut down. Moreover, in the event any repair work is ever needed on the Line at the points in question, such repair work would be impossible under the present existing conditions.

I have been directed to call this matter to your attention as Counsel for Beaunit Corporation with the hope that we can possibly arrange a conference on the matter to determine what if anything, needs to be done, or can be done to reduce the possible exposure to both the City and Beaunit.

Your kind consideration of this matter would be greatly appreciated, and I am sure that Mr. James Clear, or Mr. John McCready or our City Manager, Mr. Robert P. Asbury, Jr., will be glad to answer any questions you have in regards to this matter.

In light of this correspondence, we do not agree with NAFI's assertion that the City was inattentive to the problem created by the constant dumping which continued despite notification. As we have indicated, the City's problem of accessing its sewer line was further exacerbated by the capping of the already overburdened easement, an event which was mandated by the DCE in consequence of NAFI's dumping of fly ash. Upon its discovery that the area over the sewer line had been capped and the line was no longer accessible without great expense, the City entered into negotiations with NAFI in an attempt to resolve the problem. The City ultimately implemented a reasonable solution and NAFI was apparently unable to present a viable alternative. Under these circumstances and our review of the record, we find no merit in NAFI's argument that the City failed to take reasonable action to mitigate damages in this case.

As a final matter with respect to the award of damages in this case, we note that NAFI's brief statement that the requirement that it pay the prospective cost of financing the new sewer system "is unwarranted and unprecedented." NAFI presents no authority to support its argument that the trial court should not have included these financing costs in its award of damages. Accordingly, the trial court's decision in this regard is affirmed.

NAFI next argues that the parties' practical construction of the easement authorized it to dump fly ash on the surface over the City's sewer line because "for more than 30 years the City, as grantee, acted as if it had no right to stop NAFI from using the land above the sewer line as a landfill."

The rule of practical construction provides that the interpretation placed upon a contract by the parties thereto as evidenced by their acts will be adopted by the court. *Galleria Associates, L.P v. Mogk*, 34 S.W.3d 874, 877 (Tenn. Ct. App. 2000). However, the rule of practical construction is only applicable if "the language used by the parties to the contract is indefinite or ambiguous, and

hence of doubtful construction." *Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, et al.,* 181 S.W.2d 625 (Tenn. 1944). The easement granted to the City in the matter *sub judice* is neither ambiguous nor indefinite and states in pertinent part as follows:

> It is the intention of this instrument to convey only such rights or easements over said land as is reasonably necessary to construct said sewer interceptor line, *and to maintain the same ... .*

It is beyond dispute that an overburdening of the sewer line with fly ash and other material interfered with the City's clearly articulated right under the easement to maintain the line. Accordingly, the rule of practical construction is not applicable. Even if the rule were applicable in this case evidence hitherto referenced in this opinion contradicts NAFI's assertion that the City acted as if it had no right to stop NAFI from dumping fly ash over its sewer line.

The final issue presented in this appeal is whether the trial court erred in refusing to strike from the record findings with respect to defendant Charles K. Green.

Charles K. Green became president and chief executive officer of North American Rayon Corporation, NAFI's predecessor in title, in 1987. He subsequently became the corporation's sole owner and changed its name to North American Fibers, Inc. In its complaint, the City avers that Charles K. Green is the alter ego of the named corporate defendants and that he "transfers property between his companies, loans himself money from his companies, controls the entire operations and employee complements of each company, and deals with each company as if it were a sole proprietorship." The complaint further avers that "[t]he defendants are one and the same entity for purposes of this civil action." As set forth in its memorandum opinion, the trial court agreed that Mr. Green was the alter ego of the defendant corporations and that the defendant corporations were the alter egos of each other. However, the trial court also concluded that no liability attached with regard to Mr. Green because the City "had not proven by a preponderance of the evidence that any alter ego act of Green, or any alter ego act of the corporations, legally or proximately caused the unreasonable and substantial burden on the Plaintiff's sewer easement." NAFI argues that since the trial court concluded that it did not matter whether Mr. Green was the alter ego of the defendant he should not be embarrassed by findings of the court relative to its determination in this regard. Accordingly, NAFI argues that the trial court erred in failing to delete from the record these "embarrassing" findings.

It is our determination that the trial court did not abuse its discretion in failing to delete any of its findings with respect to Charles K. Green. In any event, no supporting authority is cited in support of this argument and, therefore, the issue is waived. As recognized in *State v. Brown*, 795 S.W.2d 689, 698 (Tenn. Cr. App. 1990):

> Failure of a defendant to cite authority for propositions in his argument on appeal constitutes waiver of the issue. *State v. Houston*, 688 S.W.2d 838 (Tenn. Crim. App. 1984); *Moorman v. State*, 577 S.W.2d 473 (Tenn. Crim. App. 1978).

The brief of the appellant should contain an argument setting forth the contentions of the appellant with respect to the issues presented with citations to the authorities and appropriate references to the record.

For the foregoing reasons the judgment of the trial court is affirmed and the cause is remanded for further action consistent with this opinion. Costs of appeal are adjudged against North American Fibers, Inc.

_____

**SHARON G. LEE, JUDGE**